FLORIDA ROYER *vs.* MUGERDICH J. NAJARIAN *et al.*
DAVID ROYER *vs.* SAME.

APRIL 22, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.    These are actions of the case brought by a wife and husband to recover the damages to them respectively, resulting from personal injuries which she suffered and which are alleged to have been caused by negligence on the part of the defendants. She had been shopping in a department store operated by the defendants on the easterly side of Main street in the city of Woonsocket and received her injuries, as she was leaving the store, by falling in the vestibule of one of the entrances.

These cases were tried together before a jury in the superior court, and at the end of evidence for the plaintiffs a

nonsuit was entered in each case on the motion of the defendants. Each case is now before us on a bill of exceptions by the plaintiff in which the only exception is to the granting of such motion. As the questions now before us are the same in both cases, we shall discuss only the wife's case.

There are three entrances to the store from Main street, which from the south to the north slopes downward in front of the store. As a result of this slope, while at the most southerly of these entrances the pavement of the vestibule, from the sidewalk to the door into the store, slopes upward at the rate of one inch to the foot, the corresponding slope of the pavement of the vestibule at the most northerly entrance is upward at the rate of 2.21 inches to the foot.

This pavement is composed of terrazzo, a manufactured material, which is commonly used for such a purpose. An architect of long experience in building construction, who was a witness for the plaintiff, testified that there are two kinds of this material. One is made with carborundum or some other abrasive material in the surface layer, to prevent slipperiness; and the other is without such material and is slippery, especially when wet. The terrazzo in these entrances is of the latter kind.

The accident to the plaintiff occurred between 8:30 and 9 o'clock on a Saturday evening, November 2, 1935. It had been raining all through the evening, and the sidewalk and the pavement of the vestibules were wet. After shopping in some other stores she and her daughter went into the defendants' store, which she had visited before only two or three times in her life. She had never noticed the slope in the street, or in the vestibules. They entered by the most southerly entrance and, after being in the store a short time and buying a few articles, they went out by the nearest exit, which was the most northerly one.

The door stood open and as the plaintiff stepped through the doorway, she did not notice that there was any slope to the pavement in the vestibule. She stepped out with her

right foot first and, as she brought her left foot forward and put it down, it slipped on the pavement and she fell, suffering the injuries for which she claims damages. She was not walking fast. After she had fallen she noticed that the pavement was wet. She was wearing oxford shoes at the time, without high heels, and the heel of the shoe which slipped was found to be solid right after the accident. The plaintiff's testimony was supported by that of her daughter, who was just behind her when she fell.

The expert witness above mentioned testified that such a pavement as was in the defendants' vestibules is not only the slippery variety, but is also more slippery when wet. He stated that it was his opinion that when a pavement of that material is wet, it constitutes a hazardous condition to those who are called upon to use it; and that the danger of an entrance of that material, and of the slope which the entrance in question had, is that when wet it is slippery, and persons using it are apt to lose their balance and fall.

He also testified, in giving opinion evidence, that there is a safeguard against such a condition; that the ordinary safeguard, in a place like that, is a rubber mat, which is the first thing that building owners use in places of that sort and is commonly used, though other kinds of mats may be used; and that temporary corrections would be cinders or sawdust. On cross-examination he testified that terrazzo is a very common pavement; that it is a common thing in Rhode Island and everywhere to have it covered with rubber mats, which are advertised for that purpose; that there is a sloping terrazzo floor in the passageway of the New Industrial Trust Building in Providence from Exchange Place to Westminster street; and that he had seen mats on that floor after a storm, when the inside was wet. He said that in his opinion the pavement where the plaintiff fell should, when wet, be covered with something to prevent the danger from slipperiness.

The trial justice ordered a nonsuit on two grounds, which he stated as follows: (1) "because the evidence does not re-

veal whether or not the plaintiff slipped on account of the so-called wet condition on the pavement"; and (2) "that The Court feels that the plaintiff has not established that the defendants were guilty of any violation of a duty owed by the defendants to the plaintiff." In addition to these grounds the defendants have urged before us a third ground, namely, that the plaintiff's testimony clearly showed that she was not in the exercise of due care.

In arguing on the last ground they say that the plaintiff testified that she did not know that there was a slant to the vestibule floor, did not observe any and did not look for any. But we cannot see that this testimony was any proof of negligence on her part, especially as she testified also that she had been in the store only two or three times before, in her life, and that she entered it this time through the most southerly entrance, where, other evidence shows, the slope was less than half as great as it was at the entrance in which she fell. They argue that the plaintiff and her daughter were in a hurry to get out because they had to go to New Bedford. But the plaintiff testified that she was not walking fast when her foot slipped.

They argue further that "she knew that it was a rainy day and she was charged with knowledge that there would be moisture outside of the store, yet she paid no attention to what kind of a surface she was stepping out onto." This is not convincing to us and we find that the evidence was such that the jury could reasonably have found that she was in the exercise of due care for her own safety.

As to the first ground upon which the nonsuit was granted, the plaintiff testified positively that she fell because her left foot slipped on the pavement, which was wet. It is not in dispute that she fell and the evidence did not give or suggest any other explanation for her falling. That explanation was an entirely reasonable one and it was made probable by the above-stated testimony of the expert that the kind of pavement which was in the vestibule where she fell, when wet,

and sloping to the extent that this pavement was, is slippery, and that a person walking over it is in danger of falling. We therefore are of the opinion that we cannot properly hold that there was no evidence for the jury in support of a finding that the plaintiff slipped and fell because of the wet condition of the pavement. Therefore the nonsuit is not supportable on the first ground stated.

The last ground is the only one which seems to us seriously arguable. The plaintiff, at the time of the accident, was a business visitor or "invitee" of the defendants, since she had been shopping in the store and was still on a part of the premises which was under their control and through which customers were expected to pass. Their duty to her was to use reasonable care to keep the premises in a safe condition for the purposes of the invitation. *Langley* v. *Woolworth.* 47 R. I. 165, 131 A. 194.

In applying this rule in this case, we must accept as true all the testimony of the architect as above summarized, and draw therefrom all reasonable inferences favorable to the plaintiff. Of special importance is his testimony that in his opinion the pavement of the vestibule, where the plaintiff fell, was dangerous to persons walking over it, when wet, because of its slipperiness and slope, and that when wet it should be covered with something to prevent that danger. Of special importance also is his testimony that the ordinary safeguard in a place like that is a rubber mat, which is commonly used for that purpose.

We must also bear in mind the fact that it had been raining all through that Saturday evening, so that it would be reasonable for the jury to infer that the defendants had notice of the wet condition of the pavement in the vestibules. There are indications in the transcript that the defendants had been operating the store for a long time with that same pavement in that entrance, so that they had plenty of time to learn of its slipperiness when wet. Taking all these things into consideration, we are of the opinion that the jury, from

the evidence for the plaintiff, could reasonably have found that the defendants were guilty of negligence in not having some safeguard on that pavement at the time when the plaintiff fell.

The defendants seem to rely greatly on the case of *Mullen* v. *Sensenbrenner Mercantile Co.*, 260 S. W. 982 (Mo. 1924), in which the action was brought against a storekeeper to recover damages for personal injuries sustained by a customer as she was leaving the store. She slipped and fell on a tile floor with a slope downward toward the sidewalk, of a little less than one inch to a foot, and with a crack in it and no mat or other safeguard on it. It was held by the supreme court that upon all the evidence, for both sides, the defendant was clearly entitled to a verdict, because it was conclusively shown that the defendant was not guilty of negligence and that, if it could be held to have been negligent, the plaintiff was clearly guilty of contributory negligence.

But there are vital differences between that case and the instant one. There, while the plaintiff alleged that the floor was slippery and dangerous, there was no evidence that it was wet or any evidence that it was slippery or dangerous, except that the plaintiff had slipped on it. There was also undisputed evidence for the defendant which proved conclusively that it was not guilty of negligence as charged by the plaintiff. As to contributory negligence, the plaintiff testified that about twenty minutes before she fell she had entered the store through the same entrance and had then noticed the crack in the floor and its slope and realized that it might be slippery for one walking down the slope. Yet she testified that when she walked out, she did not look at the floor or think about its being dangerous.

On account of these differences, that case, in our judgment, is not a precedent for sustaining the nonsuit which was entered in this case; and we are not aware of any other case which is such a precedent.

We are convinced that the evidence in this case, and especially the expert's testimony, the most important parts of which we have summarized *supra*, clearly distinguishes this case from *Ziegler* v. *Providence Biltmore Hotel Co.*, 59 R. I. 326, 195 A. 397, in which we held that a verdict for the defendant had been properly directed.

For the reasons above stated, we are of the opinion that the ruling of the trial justice in the instant case, in granting the defendants' motion for a nonsuit was prejudicial error, which entitled the plaintiff to a new trial.

In each case the plaintiff's exception is sustained and each case is remitted to the superior court for a new trial.

*Eugene L. Jalbert,* for plaintiffs.

*Patrick H. Quinn, Michael DeCiantis,* for defendant.