406 P.2d 869

**SAFEWAY STORES, INCORPORATED,**
a corporation, Appellant,

v.

Emily CONE, Appellee.*

I CA–CIV 62.

Court of Appeals of Arizona.

Oct. 26, 1965.

Review Denied Jan. 4, 1966.

Kramer, Roche, Burch & Streich, by Daniel Cracchiolo, Mark I. Harrison, Phoenix, for appellant.

John B. Marron, Phoenix, for appellee.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's number 7971. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

DONOFRIO, Judge.

This is an appeal by Defendant from a judgment in favor of Plaintiff for injuries received by her when she slipped on water and slush and fell in Defendant's Safeway Store located just north of Thomas Road on Seventh Avenue, in Phoenix.

On April 16, 1962, the day of the accident, it had rained in the morning and again intermittently for about an hour and a half prior to Plaintiff entering Defendant's store. It was raining hard when Plaintiff entered through the main door of the store at about 1:00 P.M. in the afternoon. As she entered, she paused to take off her rain hat and then proceeded further into the store and turned right. She noticed water and slush on the floor and hesitated before proceeding on into the store. She was about six feet inside the store and in front of the check-out counters when she fell to the floor suffering a compound fracture of her right wrist, more technically her right radius and ulnar styloid. She was wearing low heel shoes.

At the time of the fall there were a few check-out girls and carry-out boys on duty and Plaintiff had a passing conversation with one of the check-out girls prior to the fall.

There is no direct evidence as to the size of the puddle or how long it had been on the floor. The only evidence concerning the water is the testimony of the Plaintiff.

"Q. Now, Mrs. Cone, if you had stopped when you first noticed this puddle of water which you said you ultimately fell in, if you had stopped when you first noticed it, could you have entered the store or avoided the water in any way?

A. No, I certainly could not.

Q. What was the condition of the floor back of you at that point, towards the door?

A. Well, it was wet in back, and it was wet on both sides."

After the fall, plaintiff examined the water and slush and said if felt funny in her hand and was slippery.

Plaintiff was unable to get up from the floor by herself and was assisted up and taken to a chair by an unknown person. She remained there for some time before the store manager came over to the Plaintiff and told her he couldn't do anything for her now but that he would take her to the hospital in a little while. Shortly after this conversation, an unknown person took the Plaintiff to the hospital.

Plaintiff's doctor x-rayed the wrist and sent her to a bone specialist where, because the arm was badly swollen, a temporary cast was put on. A permanent cast was put on two days later. Plaintiff complained of considerable pain and the doctor prescribed codeine for relief. There is medical testimony that compound fractures such as the one Plaintiff incurred are very painful especially for the first few days.

Plaintiff's arm was in a cast for approximately four months during which time, and for eight months after the cast was removed, she received physical therapy for her wrist.

X-rays taken three years after the accident showed a good union of the radius but not of the ulnar styloid. The treating physician testified that the residual condition caused by the ulnar styloid not making a good union could be consistent with some pain with weather changes.

At the time of the accident Plaintiff was employed as a receptionist, hotel clerk and switchboard operator. She was unable to continue with those jobs due to the fracture and had to quit. She took a job answering calls for a burglar alarm service and when the company terminated business she held jobs as a switchboard operator at various hotels. She was employed at the time of trial at the Ramada Inn as a P.B.X. operator. Plaintiff suffered a decrease in income as a result of being unable to adequately perform the type of employment she was engaged in at the time of the accident. Plaintiff is right handed and her

injury has inhibited her efficiency in the performance of these jobs and also restricted her in the performance of routine household and personal operations. At the time of the trial the wrist injury still gave her trouble to the extent that she was receiving heat treatments.

Appellant contends on appeal that the court erred in denying Defendant's motions for directed verdict and for judgment notwithstanding the verdict on the grounds that the essential elements of actionable negligence were not established by the evidence.

■ The elements needed to impose liability upon the Defendant are: (1) a duty owed to Plaintiff, (2) a breach thereof by Defendant and (3) as a legal result the Plaintiff is injured. We only need concern ourselves with the first two elements for if we find numbers 1 and 2 exist, then the fact that number 3 exists is not disputed. What is the duty owed to Plaintiff, a business visitor? In Sherman v. Arno, 94 Ariz. 284, 383 P.2d 741 (1963), the court stated:

"* * * a possessor of premises is not an insurer of the safety of business invitees, but is only required to exercise ordinary care to maintain the premises in a reasonably safe condition." 94 Ariz. 290, 383 P.2d 744.

■ Has the Defendant breached this duty? To answer this question we must determine if the Defendant had any notice actual or constructive, of the dangerous condition. Defendant contends that he must have notice of the water and slush Plaintiff slipped on and not just notice of the fact that it is raining. We agree with this contention, but the fact that it is raining places a person on notice of potential dangerous conditions arising. This circumstance may require more frequent inspections than would otherwise be necessary. Williamson v. F. W. Woolworth Co., 237 Miss. 141, 112 So.2d 529, 532 (1959). The notice need not be actual but can be constructive. The length of time it had been raining, the location of the puddle, the amount of water, how long it had been there and the consistency of the puddle are all facts which when taken as a whole go to show that even if the Defendant did not have actual notice it should have noticed, and the law imputes this knowledge to it. In our case, it had been raining off and on for about an hour and a half prior to Plaintiff entering the store, and pouring hard as Plaintiff entered the store. In Royer v. Najarian, 60 R.I. 368, 198 A. 562 (1938) the court stated:

"We must also bear in mind the fact that it had been raining all through that Saturday evening, so it would be reasonable for the jury to infer that the defendants had notice of the wet condition of the pavement in the vestibules." 198 A. 565.

■ Though the area concerned in the Royer case was directly exposed to the rain we do not think that fact has any bearing on the principle announced therein. The defendant contends that the fact that the area was outside is important since the owner can more reasonably believe this area directly exposed to the elements may become dangerous. A store owner also can reasonably believe that water will be tracked into a store by patrons using the main door during a rain. Blake v. Great Atlantic & Pacific Tea Co., 266 Mass. 12, 164 N.E. 486 at 487. Therefore the principle announced in the Royer case would apply equally as well to the situation in the case at bar.

The water and slush was located about six feet in from the main entrance. This entrance was used by the carry-out boys, and it appears that check-out girls faced from time to time in the direction of the puddles. The puddles were not in an obscure spot but were in plain view for all to see. The jury verdict in favor of Plaintiff absolves her of the claim of contributory negligence. In Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598 (1937) it was stated:

"The condition here had been developing, if not existing the whole time,

for eight or nine hours in plain view of the defendant's employees. The duty, in respect of maintaining the premises in a safe condition, is an active, affirmative, and positive one." 109 S.W. 2d 600.

And in Dyer v. Stephens Buick Co., La. App., 125 So.2d 185 (4th Circ.) (1960), the observation was made that:

"[I]t was there, right in front of him, a spot of oil eight inches in diameter on the concrete floor otherwise dry and in good condition. If he did not see the spot he certainly should have." 125 So.2d 188.

The same can be said for the Defendant here. There was considerable water all around the entrance way as testified to by Plaintiff. It takes time for water to accumulate in large quantities and it is reasonable to assume that the water was tracked in by patrons using the main entrance. Blake v. Great Atlantic & Pacific Tea Co. (supra).

There is no direct testimony as to how long the puddle was there. There is only circumstantial evidence that the puddle had been there a sufficient length of time to impose notice of it upon the Defendant. The Plaintiff testified that when she felt the water it felt funny. She also described it as water and slush. In Louie v. Hagstrom's Food Stores, 81 Cal.App.2d 601, 184 P.2d 708, the court stated:

"The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it." 184 P.2d 712.

It can be fairly said that when all these circumstances are taken together the De-

fendant had sufficient opportunity to discover the dangerous condition and correct it.

██ The Defendant contends that this case is controlled by McGuire v. Valley National Bank of Phoenix, 94 Ariz. 50, 381 P.2d 588 (1963). We cannot agree. In the McGuire case (supra) the plaintiff was injured when he slipped on a "pebble-like substance" on a stairway maintained for his use. Workmen of an independent contractor were also continually using this stairway and their use resulted in "dust, grit and dirt" being tracked down from the working area. The court sustained a directed verdict in favor of the defendant, manager of the building, saying that the defendant had no notice of the "pebble-like substance" which caused plaintiff to fall. However, the court did indicate that it might have been different had the plaintiff slipped on the "dust, grit and dirt" since defendant had notice of this on the basis of a continuing condition of danger. The court in effect said that the "pebble-like substance" was not consistent with the workmen's use of the stairway but that the "dust, grit and dirt" was. We believe the present case falls more in the category of the "dust, grit and dirt" type situation. It is not unreasonable to say that puddles at the main entrance were consistent with the use of the store by business invitees during a rain. The fact of rain puts you on notice not of any particular puddle but of a condition that is likely to create a potential danger. Here it had been raining for an hour and a half prior to the accident. The Plaintiff testified that there was water all around her. There was a sufficient quantity of water to warrant the jury in finding that the Defendant had breached its duty to Plaintiff in the exercise of ordinary care to maintain its premises in a reasonably safe condition. We are compelled to view the evidence most favorable to sustain the verdict. Curlee v. Morris, 72 Ariz. 125, 231 P.2d 752 (1951). The Defendant contends that the Plaintiff's testimony is confusing as to the location

of the accident in the store. Part of the apparent confusion comes about from the fact that at the time Plaintiff was testifying she was drawing a diagram on a blackboard. This drawing was not preserved for our benefit. The judge and jury had the benefit of this drawing and when taken in connection with the testimony of the Plaintiff while making the drawing we are compelled to assume it would have shown enough facts, together with the other facts proved, to warrant imposing liability upon the Defendant. In Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693 (1947), the assignment by appellant that the evidence failed to warrant or justify any judgment in favor of the plaintiff was disposed of in part by the court stating:

"* * * it is the universal rule that an appellate court will not consider the question of the sufficiency of the evidence where the record does not include all of the evidence." 65 Ariz. 161, 176 P.2d 695.

The Defendant further contends that the trial court erred in giving Plaintiff's requested instructions covering permanent loss of earning power and future medical treatment and in denying Defendant's motion for a new trial based on such errors in the charge to the jury because there is no evidence in the record from which the jury could reasonably infer that Plaintiff's earning power was permanently injured or that sums would be expended by her for future medical treatment. We cannot agree with the Defendant's contentions. Medical testimony established that there was not a good union of the ulnar styloid and that Plaintiff could expect to incur pain with weather changes. The Plaintiff stated that she was unable to perform many routine tasks without some pain and difficulty, and was unable to adequately perform the type of work she was doing prior to the accident. A jury would not be unreasonable in concluding that Plaintiff had sustained a permanent loss

of earning power. Leave v. Boston Elevated Ry. Co., 306 Mass. 391, 28 N.E.2d 483 (1940); Turner v. Scanlon, 146 Conn. 149, 148 A.2d 334 (1959); Osterode v. Almquist, 89 Cal.App.2d 15, 200 P.2d 169 (1948).

Defendant's assignment of error concerning the future medical treatment is not well taken. The portion of Plaintiff's requested instruction permitting the jury to consider in the award sums that would be required to be expended by Plaintiff for future medical treatment was not given.

We are unable to find any error in the trial court proceedings to warrant a reversal.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.