420 P.2d 564

**Frank B. CARREL and Clariece Carrel,
his wife, Appellants,**

**v.**

**Walter E. LUX and Irene L. Lux, his wife,
Russ Lyon, dba Russ Lyon Realty, Town-
send C. Shields, and Robert Hubbard, Ap-
pellees.**

**No. 7919.**

Supreme Court of Arizona.

In Division.

Nov. 17, 1966.

Rehearing Denied Dec. 6, 1966.

Powers & Rehnquist, Phoenix, for appellants.

D. Kelly Turner and Lewis B. Moore, Jr., Scottsdale, for appellees Lux.

Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, for appellees Lyon, Shields, and Hubbard.

UDALL, Justice.

Frank and Clariece Carrel, the plaintiffs, brought suit against the defendants, Walter and Irene Lux, Russ Lyon, dba Russ Lyon Realty, Townsend Shields, and Robert Hubbard, to recover damages caused by alleged fraudulent representations in connection with the sale of a piece of real property. The case was tried before a jury and, at the close of the evidence for plaintiffs, the court granted a motion for a directed verdict in favor of each of the defendants, on the ground that plaintiffs had failed to sustain their burden of proof and had not as a matter of law made out a prima facie case against the defendants. Judgment was rendered on the verdict and thereafter this appeal was taken.

The assignment of error presented to us on this appeal is that the trial court erred in directing a verdict for the defendants at the close of plaintiffs' case for the reason that plaintiffs' evidence was sufficient to make out a claim for relief on the basis of fraud against each of the defendants. More specifically, as against all defendants, there was evidence from which the jury could have concluded that defendants Shields, Hubbard, Lyon and Lux had made a material misrepresentation as to the amount of acreage which the property contained, which representation and the circumstances surrounding it contained all the necessary elements of actionable fraud. Secondly, as against defendants Lux, there was evidence from which the jury could have concluded that they had made a material misrepresentation as to the operating income of the property during the years it was owned by them, which representation and the circumstances surrounding it contained all the necessary elements of actionable fraud.

In deciding if there was sufficient evidence to have the case submitted to the jury for a verdict on the merits, we must take the evidence as a whole and construe it in the light most favorable to plaintiffs. The plaintiffs came to Arizona from California in August, 1959. Mr. Carrel had recently retired from business so they were looking for a place to live and for some income property which they might purchase with their savings. Responding to an advertisement in a newspaper, plaintiffs went to the office of Russ Lyon Realty Company, and were met there by Townsend Shields, a salesman employed by the realty company. He showed them the property advertised in the newspaper but it did not appeal to them. Mr. Shields then told plaintiffs that a piece of property known as La Vista Grande Resort was for sale and suggested that they look at it. The plaintiffs, accompanied by Shields and Mr. Lux, the owner of the property, toured La Vista Grande that same

day. During the tour, Shields, in the presence of Lux, told Mr. Carrel that the property consisted of 7.8 acres. Plaintiffs expressed an interest in the property and asked Lux to furnish an operating statement covering the time during which he and his wife had owned it. Mr. Lux furnished them such a statement a day or so later through Shields and it showed an annual net operating income from the property of some $12,600.00.

The Luxs' asking price for the property, of $160,000, was thought by plaintiffs to be a bit beyond their reach. After further negotiation, however, they entered into an agreement of sale whereby they contracted to purchase it for $152,500. It was agreed that they were to make a $25,000 down payment, and make monthly payments totaling $800 on the existing first and second mortgages and to pay off the Luxs' third mortgage by an annual lump sum payment of $10,000 principal plus interest, the first payment to be due in March, 1960. Plaintiffs put up the $25,000, which was paid out at the close of escrow and they took possession of the property on September 15, 1959. Once in possession, plaintiffs invested an additional $7,000 in remodeling and refurbishing the existing rental units, but in the following seven month period the property produced a gross income of far less than what the Luxs' income statement reflected they had obtained in the previous year. In fact, plaintiffs sustained an operating loss of approximately $9,000 in those seven months. By reason of the substantial mortgage payments and the absence of operating income, plaintiffs were forced in early 1960 to put the property up for sale and finally sell it in May, 1960. In the previous March, however, plaintiffs had instituted this action after learning that the acreage in their property was not 7.8 as they had been told, but was instead 5.3. Plaintiffs also made the further discovery that the Luxs' income tax returns revealed operating losses for each year they had operated the property.

The elements necessary to establish fraudulent misrepresentation are well settled in this state. In Moore v. Meyers, 31 Ariz. 347, 253 P. 626, 628, we set them out as follows:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury."

Since the case at bar is one in which the trial court directed a verdict for defendants, the weight of plaintiffs' evidence does not concern this Court. Our task is merely to determine if there was evidence upon which a reasonable person could conclude that each of the elements of fraud were present. Joseph v. Tibsherany, 88 Ariz. 205, 354, P.2d 254. Therefore, we will examine the evidence adduced by plaintiffs to see if it would support a finding by the jury as to each of the respective elements of actionable fraud for one, misrepresentation as to income and two, misrepresentation as to acreage.

As a general rule, a false representation as to past or present rents, profits, or income is held to constitute a sufficient basis for an action for damages or recision on the ground of fraud. See Annot., 27 A.L.R.2d 14 (1953). It is clear from an examination of the record and not argued otherwise by defendants Lux that there was sufficient evidence presented by plaintiffs at the trial to show that most of the elements of fraud were present; in particular, that a representation as to past income was made by defendants, Lux, that it was a material representation and that plaintiffs relied on its truth. However, defendants Lux do assail the sufficiency of plaintiffs' evidence on three of the necessary elements, namely: the falsity of the representation, the plaintiffs' right to rely thereon

and the damages suffered by plaintiffs thereby.

Plaintiffs' exhibit 3 is an income statement which defendants Lux gave them and which shows that between May 15, 1958 and May 15, 1959, defendants derived a gross income from the subject property of $26,743 and incurred operating expenses of $14,068, which left a net operating income of $12,675. In seeking to establish that the income statement was a false representation of the past operating income, plaintiffs introduced in evidence as their exhibits 13 and 14, the income tax returns of defendants Lux for the years 1958 and 1959. These returns cover the period of time during which defendants owned the subject property and to which the figures on the income statement given to plaintiffs relate.

The 1958 tax return shows the total income for the property for the year as $5,953.40, and the total expenses as $11,223, leaving an operating loss of $5,269.60. The tax return for 1959 gives the gross income from the property for the period between January 1st and September 15th, the date on which plaintiffs took possession, as $15,453 and listed an operating loss of $9,102 for that period. Comparing the figures on the income statement with those on the tax returns we see that defendants represented their gross income from the property between May 15, 1958 and December 31, 1958, as $7,772 on the income statement, but defendants' 1958 tax return shows a gross income from the property of $5,953.40 for the entire twelve months. For the period from January 1, 1959 to May 15, 1959, the income statement shows a gross income of $18,971, yet, the gross income from the property for the longer period of January 1, 1959 to September 15, 1959, is represented as being $15,453 on defendants' income tax return for that year. Furthermore, we see that defendants represented on the income statement that their total operating expense in connection with the property was $2,550 for 1958, but their tax return for that same year stated the operating expenses to be $11,223. In the absence of a reasonable explanation for the gross disparity between the figures on the income statement and the income tax returns, we are compelled to assume that defendants Lux made false representations of income and profits to either the government or the plaintiffs and as to which, is a question for a jury to decide.

It is contended by defendants Lux that since plaintiffs did not inspect the resort records nor make any inquiry concerning the particular facts involved, they did not have the right to rely on the income statement. Plaintiffs argue that since they specifically requested the operating statement from defendants and they based their estimate on whether they could afford the property on the information shown in the operating statement, there was reliance in fact and they had the right to rely as they come within the purview of the rule stated in Restatement, Torts, § 540:

> "The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have acertained the falsity of the representations had he made an investigation."

Since Comment (a) under § 540 states that the above rule applies not only where an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction but also, where it could be made without any considerable trouble or expense, we are of the opinion that plaintiffs come within the rule's operation and thus defendants' argument is without merit. Moreover, we think that an income statement, such as the one in this case which shows a gross income of $26,743, operating expenses of $14,068 and a net operating income of $12,675, purports to give the income and profits down to the last dollar over a fixed period of time. Since the income statement was drawn up by the owners of the property, whom we might assume to have complete knowledge of all the facts, the material inference left is

that the amounts indicated came from authentic records. Representations such as that may be said to have been calculated to lull the buyers of the property into the belief that they were true and to cause them to refrain from making a more extensive investigation. In such a situation, the buyer should not be prevented from recovering by a failure to investigate.

Plaintiffs called Carl Howell as an appraisal witness at the trial. He gave his opinion as to the value of the property with an operating income as represented by defendants Lux and the value with no operating income. Howell stated that assuming the property consisted of 5.3 acres and had an operating income of $12,600, the value of the property would be $116,000; assuming the property consisted of 5.3 acres and had an operating loss, its value would be $85,500. The difference in value was thus determined to be $30,500. Inasmuch as the difference between the real value of the property purchased and the value it would have had had the representation been true is the measure of damages in fraud cases under our so-called "benefit of the bargain" rule as stated in Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161, we are satisfied that the testimony of Mr. Howell was sufficient evidence of some damage to entitle plaintiffs to a jury determination of the question.

We therefore conclude there was evidence from which the jury could have inferred all of the necessary elements for a claim of actionable fraud by plaintiffs against defendants Lux with respect to the misrepresentation as to operating income.

Concerning the alleged misrepresentation as to acreage, plaintiff, Mr. Carrel, testified that defendant Shields told him in the presence of Mr. Lux that there were 7.8 acres in the property. Plaintiffs introduced in evidence as their exhibits 1 and 2, the first purchase contract and receipt, which contained an offer which was rejected by defendants Lux, and the second purchase contract and receipt, which was signed by defendants Lux and became the basis of the ultimate agreement of sale. Both of these instruments were prepared by defendants Shields and Hubbard in the office of Russ Lyon Realty and both contain the typed statement that "the property consists of 7.8 acres." Hence, it is manifest that plaintiffs did adduce evidence showing defendants made both an oral and written representation that there were 7.8 acres in the subject property.

However, defendants Shields, Hubbard and Lyon (hereinafter referred to as realtors) contend that Shields' oral statement is the only alleged misrepresentation upon which plaintiffs base their claim for damages against them because plaintiffs did not allege in their complaint that Shields or Hubbard made any representation by reason of the reference to 7.8 acres in the purchase contract and receipt. Defendant realtors argue that the purchase contract and receipt was an agreement by and between the sellers Lux and the buyers Carrel in which all representations concerning the subject matter of the sale, as to acreage or any other matter, was by and between them only. The portion of plaintiffs' complaint upon which defendants rest their argument reads:

"VI

"Defendants Shields and Hubbard, while in the scope of their employment by Defendant Lyon, in an effort to persuade Plaintiffs to purchase the previously described real property, represented to Plaintiffs that the said real property which was a part of the transaction consisted of 7.8 acres. This representation by Defendants Shields and Hubbard was separate and apart from, and independent from, any similar representation made by Defendants Lux."

"10. In reliance upon the above representation, Plaintiffs entered into an agreement for purchase of the said real property from Defendants Lux * * *. In further consummation of said transaction, Plaintiffs and Defendants Lux entered into an agreement for sale of said real property * * *."

Insofar as the representation referred to in the above quoted portion of the complaint was alleged to be "separate and apart from, and independent from, any similar representation made by Defendants Lux", defendant realtors assert that the representation complained of could not have been made in the same instrument which constitutes the only representation which plaintiffs claim was made by defendants Lux as to the property containing 7.8 acres. Furthermore, defendant realtors contend that the representation referred to in paragraph VI of the complaint was alleged to have been relied upon by plaintiffs to "enter into" the purchase contract and thus necessarily occurred prior to the execution thereof. We are of the opinion that the proper interpretation of the portion of the complaint in question is that the representations made by Shields and Hubbard orally and when they prepared the contract were separate and distinct from the representation made by defendants Lux when they, at a later date, signed the instrument which had been prepared by defendant realtors. It was established by the testimony of Mr. Carrel and of Shields and Hubbard that the purchase contract was prepared in the Russ Lyon office by Shields and Hubbard and then tendered to plaintiffs. We think that a representation contained in the written contract itself at the time it is presented to the buyers to sign may be relied upon by buyers as an inducement to enter into a contract.

It is not contested by defendants that there was sufficient evidence to show: one, that the representation of 7.8 acres was false since the property actually contained only 5.3 acres; two, that defendants Lux, Shields and Hubbard did not know how much acreage the property contained; and three, that plaintiffs were ignorant of the falsity of the representation. Defendants do claim however that any representations as to the quantity of the land is immaterial because the trial court found the sale of the property to be one in gross. The differences between a sale in gross and a sale by the acre are defined in 55 Am. Jur., Vendor and Purchaser, § 127:

"A contract of sale by the acre is one wherein a specified quantity is material. Under such a contract the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess. A contract of sale by the tract or in gross is one wherein boundaries are specified, but quantity is not specified or, if specified, the existence of the exact quantity specified is not material; each party takes the risk of the actual quantity varying to some extent from what he expects it to be."

Defendants contend the sale was in gross because what was sold was LaVista Grande Resort and not a certain number of acres. To support such, they point to the purchase contract and receipt, which reads:

"LaVista Grande Resort, 5702 East Camelback Road, consisting of 7.8 acres, completely furnished except for personal possessions * * *."

Defendants further argue that even if we do not construe the above as a contract for a sale in gross, said instrument was only an agreement to enter into a sale contract and as such, it merged in the actual contract of sale which was the one recorded. The instrument recorded contains no representation or statement as to acreage whatsoever, for the subject land is described merely by reference to a subdivision plat and by metes and bounds and thus comes exactly within the requirements of a sale in gross. Defendants cite us to the case of Speedway Enterprises v. Hartsell, 75 Ariz. 36, 251 P.2d 641. This Court there upheld the finding of the trial court that the parties had not bargained for any specific amount of acres, and that a disparity of 80 acres between the 915 acres which it was thought the property contained and the 835 acres which it did contain was not material under the circumstances. We said at page 41, 251 P.2d at page 645:

"We believe the great majority of cases hold that where lands are described by metes and bounds, according to Govern-

ment survey, or by landmark such as the XYZ Ranch, etc., the sale is one in gross. * * *"

We think defendants' reliance on the Speedway decision is misplaced, for in that case the vendor brought an action for breach of contract and the defendant alleged a mutual mistake as to the number of acres as a ground for recission. In the case at bar, however, plaintiffs brought an action for damages based on fraud and it has been held that where fraud as to the quantity of land sold is alleged and proven, there may be a recovery notwithstanding the sale was in gross. Miller v. Conn, 193 Iowa 458, 186 N.W. 902; Thomas v. Beebe, 25 N.Y. 244; Hoke v. Welsh, 162 Neb. 831, 77 N.W.2d 659.

The case of Hoke v. Welsh, supra, is particularly persuasive. Therein, the rule was stated that on a sale of land by its legal description, or other specific description by which its boundaries are made certain, for a sum in gross, the boundaries will control in case of a discrepancy as to quantity, and that such a sale in gross affords no remedy to the grantor or the grantee for an excess or deficiency unless such excess is so great as to raise a presumption of fraud. The Nebraska Supreme Court, in pointing out that the shortage of land was approximately 50 per cent of that conveyed by the deed, said that whether or not the sale was in gross was therefore immaterial, and that it was sufficient to raise the presumption of fraud under the foregoing rule even if it be treated as a sale in gross. We are of the opinion that a representation that the property contains 7.8 acres when it actually contains only 5.3 acres, a shortage of approximately one-third, is a deficiency so great as to raise a presumption of fraud and that therefore whether the sale herein was one in gross or whether we treat it as such is immaterial. Our adoption of the above rule in no way erodes the rule we laid down in the Speedway case, supra, for we intimated therein that an allegation of fraud and a disposition of the case on such

grounds, would not affect the applicability of such. On page 41 of that opinion in 75 Ariz., page 645 of 251 P.2d, in discussing the Georgia decision in Security Loan & Abstract Co. v. Marchman, 41 Ga.App. 808, 154 S.E. 822, we stated:

"Although this case was later reversed it was upon the ground of fraud alleged in amended pleadings and did not affect the above rule."

Thus, since the representation of acreage was not made immaterial herein by a finding that the sale was in gross, we must examine the sufficiency of the evidence adduced to establish the element of materiality. Mr. Carrel testified as follows:

"Q Well, was the amount of acreage in the property of any importance to you in your consideration of whether or not you would purchase it, Mr. Carrel?

"A It most certainly was.

"Q Why?

"A Any property in that vicinity, in and around Scottsdale, to my mind, was very valuable."

We are satisfied that the above testimony is such evidence from which a reasonable person could conclude that the element of materiality was present.

Defendant realtors also claim that plaintiffs' evidence did not establish that Shields intended the plaintiffs should rely on his representation of acreage. In reliance on the case of Smith v. Badlam, 112 Vt. 143, 22 A.2d 161, defendants allege it is not possible to draw an inference of such because the evidence shows that at the time Shields made the alleged representation he had not told plaintiffs that he knew or was familiar with the property or the amount of acreage it contained. We do not think the Badlam decision is controlling for that case is clearly distinguishable from the instant one. In the Badlam case, the real estate agent based his representation upon a specific written inventory which he received from the owner and which fact the plaintiff understood, whereas in the case now before us there was no evidence of

any such written material upon which defendants based their representations and plaintiffs knew of none.

It is our opinion that where a real estate salesman, who has a motive of monetary gain through receipt of a substantial commission, makes a statement to a proposed buyer describing the property to be sold, such would support a finding by the jury that the person making the statement intended the proposed buyer to rely upon it. Restatement, Torts, § 531, comment (a), states the applicable law in the following manner:

"Although one is not liable to another merely because he should have realized that the other would rely upon the misrepresentation * * * the fact that the recipient's reliance upon the misrepresentation is likely to be of advantage to its maker is to be considered in determining whether the representation was made with intent to influence the recipient."

In addition, since both Shields and Hubbard testified at the trial as to their ignorance of the number of acres in the property at the time they made the representations that the property consisted of 7.8 acres, the following statement of the general rule as contained in 23 Am.Jur., Fraud and Deceit, § 119, applies:

"Such an intent will be inferred where a false statement, in its nature calculated to defraud and injure, is made with knowledge of its falsity, or with what the law regards as equivalent to such knowledge, as where * * * a person makes a representation positively, or professing to speak as of his own knowledge, without having any knowledge on the subject. In such cases the intent to deceive may be found from the fact that the representation was false, without further proof of actual intent."

Three cases are cited by defendants Lux in their brief to support their contention that plaintiffs not only failed to show reliance, but also the right to rely on their representation as to acreage. We deem it sufficient to merely note that all three cases are distinguishable from the case at bar and that in our opinion there was sufficient evidence from which to conclude those two elements of fraud were present.

Defendant realtors also attack plaintiffs' showing of their right to rely on the acreage representation. On that question, plaintiffs' brief contains the following quotation from 23 Am.Jur., Fraud and Deceit, § 161:

"The rule is followed at the present time in practically all American jurisdictions, in respect of transactions involving both real and personal property, that one to whom a positive, distinct, and definite representation has been made is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved."

It is contended by defendant realtors that the above rule applies only where the person who made the representation is one who in fact is a party who does know or is charged with knowledge of the fact about which the representation is made and that such does not include a real estate salesman acting in his capacity as such. Defendants assert that a real estate salesman is an agent of a party, in this case of the owners Lux and where the owner of the property is known to the buyer, as was the situation here, the buyer is charged with dealing with the salesman as a disclosed agent of the selling party. Defendants conclude that since this Court decided in Light v. Chandler Improvement Co., 33 Ariz. 101, 261 P. 969, 57 A.L.R. 107, that a real estate broker has no power to bind the property owner by representations in regard to quantity of land, as a matter of law plaintiffs had no right to rely upon a representation of quantity by Shields or Hubbard.

We did not hold in the Light case that defrauded purchasers do not have the right to rely, for that case dealt only with the question of the power of the broker to bind the owner by misrepresentations. We held therein that an innocent owner was exon-

erated from liability for misrepresentations by the broker, but we did not say that the purchaser did not have the right to sue the broker in damages for fraud. Therefore, defendant realtors' argument is without merit.

Defendant Lyon asserts a separate argument concerning plaintiffs' right to rely. He contends that since a real estate salesman licensed to a real estate broker is a special agent with authority limited to finding a purchaser of property the broker has listed for sale, persons dealing with the salesman are bound, if they would hold the broker, to ascertain both the fact of agency and the nature and extent of the salesman's authority. It is claimed that since the record does not show that plaintiffs made any effort to determine if Shields or Hubbard had the authority from Lyon to make a representation concerning acreage, plaintiffs had no right to rely on their statements as to the quantity of land. The validity of Lyon's contention is dependent upon whether his salesmen's representations as to acreage were made within the scope of their employment. Plaintiffs had the right to rely on the salesmen's representations and Lyon may be held liable through the representations of his agents if such representations were actually authorized, impliedly authorized, or if the agents had apparent authority. Restatement, Agency 2d, § 257.

■ It is a general rule that a power given an agent to perform a particular service carries with it the authority to do whatever is usual and necessary to carry into effect the principal power. An agent or broker employed to find a purchaser for real property could hardly make a beginning in his negotiations unless he was empowered to exhibit the property and make representations concerning it of some sort, thus, where the property is available to view, it is usual and customary to exhibit it to the prospective purchaser.

We have not previously had occasion to comment on the extent of the authority of the salesman of a real estate broker, but in Larson v. Bear, 38 Wash.2d 485, 230 P.2d 610, the Washington Supreme Court said at page 613:

"* * * (S)uch agents do not have implied authority to make a contract of sale, or make representations as to the quality, condition, or income of property, but are limited to finding a purchaser, showing the property to him and identifying it or indicating its boundaries."

The Washington court also held in an earlier decision that the principal would be bound by the representations made by a real estate agent as to the area and boundaries of the land. Yarnall v. Knickerbocker Co., 120 Wash. 205, 206 P. 936, 938.

■ By showing a piece of property to a prospective purchaser, the salesman seeks to indicate the very subject matter of the negotiation for the purpose of identifying it and providing an opportunity for its inspection. It is thus manifest that to identify a piece of property, a salesman must have the authority to make representations concerning a property's area and boundaries. After due consideration, we are of the opinion it is equally manifest that a representation concerning a property's acreage is merely another method of identifying the property and therefore, that a real estate agent must be impliedly authorized to make such a representation. Such a method of identification is of special importance to both a prospective purchaser and a salesman seeking to indicate the area a property encompasses when its boundary lines and the area within them are not readily apparent from a view of the property by reason of its topographical characteristics.

■ Mr. Howell, plaintiffs' appraisal witness, was permitted by the trial court to testify to his appraisal of the property assuming it consisted of 7.8 acres as represented by defendants and assuming it consisted of 5.3 acres. He determined the difference between the actual value of the property and its value if it had been as represented to be $25,000. Defendants contend Howell was not qualified and not

competent to give expert testimony with respect to the valuation of resort properties. Suffice it to say, all of defendants' attempts to show the unfitness of the witness go to the weight to be given his testimony by a jury rather than to its admissibility. The lower court determined Mr. Howell was qualified and as we stated in Board of Regents of University, etc. v. Cannon, 86 Ariz. 176, 178, 342 P.2d 207, 209:

> "The question of whether any witness, whether or not designated 'expert' is competent to testify on a given subject rests in the sound discretion of the trial court, and its exercise will not be reviewed but for abuse. * * *"

Defendants raise two further arguments in contending that plaintiffs' evidence on the element of damages was insufficient to entitle plaintiffs to a jury determination of the question. It is asserted by them that the only question germane to a determination of whether plaintiffs suffered any damages resulting from the difference in acreage is whether there is a difference in the value of the actual property purchased, which was the entire La Vista Grande Resort containing 5.3 acres as a going business, and the value the entire resort would have if all the factors remained the same except that the acreage was increased 2.5 acres; and that since plaintiffs adduced no evidence that the *resort* was worth more with the extra acreage, there was no proof that plaintiffs suffered any damage by reason of the alleged misrepresentation as to acreage.

 We cannot assent for defendants base their argument on the assumption that what was sold to plaintiffs was La Vista Grande Resort, and as such was a sale in gross with the number of acres it contained being immaterial. However, we held *supra,* that there was evidence the acreage in the property was material to plaintiffs and that the representation of acreage was not made immaterial by whether the sale was one in gross. Hence, inasmuch as Mr. Howell testified specifically as to the difference in the value of the property with 5.3 and with 7.8 acres, we think there was sufficient evidence that plaintiffs suffered some damage.

 Defendants' third argument is that Howell's testimony as to the value of the property if it contained 7.8 acres is not valid because in applying the "benefit of the bargain" rule, the defrauded purchaser is entitled to recover the difference between the actual value of the property and its value if it had been as represented, with this latter amount equal to the actual price which was paid by the purchaser. In essence, the "as represented" value must in all cases be taken to be the sale price actually paid by the defrauded party and therefore a purchaser should never be entitled to more than the difference between the sale price and the value of the property as it actually was.

Such a contention is not merely a twisting of the "benefit of the bargain" rule adopted by this Court but, if we subscribed to defendants' interpretation, we would in effect be adopting the minority "out of pocket" rule, which we previously rejected in Lutfy v. R. D. Roper & Sons Motor Co., supra. That, we do not propose to do, so if plaintiffs can satisfy a jury that they were defrauded by defendants, and that as a result of such fraud there was a difference of $25,000 between the value of the property they purchased had it been as represented and as it actually was, plaintiffs would be entitled to recover that sum as damages. The fact that plaintiffs may have negotiated a very advantageous purchase price with defendants Lux should have no bearing on their right to recover damages for fraud.

Therefore, as to Shields, who made the oral misrepresentation, Hubbard, who joined with Shields in preparing the instrument containing the written representation and defendants Lux, who adopted the oral representation of their agent by silence, and the written representation by signing their name to it, all the elements of a cause

442

of action for fraud were present. Defendant realtors contend, however, that defendants Lux in adopting the oral and written representations, ratified such representations of their agents and the effect of the ratification was to release Shields, as well as Hubbard and Lyon, from any liability to plaintiffs. Defendants' contention is based on the assumption that the information as to the amount of acreage was not supplied Shields by defendants Lux and that Shields would therefore have been liable to plaintiffs, in the absence of Luxs' ratification, only because Shields had no power to bind the defendants Lux.

■■■ We are of the opinion that defendant realtors' position is untenable. If a jury determines that Shields and Hubbard are liable to plaintiffs for fraudulent misrepresentations, such liability will not have resulted because they made representations which defendants Lux had not authorized, but because the jury believed that Shields and Hubbard, themselves, made fraudulent representations which would have made them liable whether authorized or not by the Luxs. The governing principles of law are stated in Restatement, Agency 2d § 360 and § 348:

> § 360 "Ratification releases a purported agent from liability to a third person for conduct which was tortious with respect to him only because the agent had no power to bind the principal thereby; *ratification does not release the agent from liability for conduct which would have been tortious although authorized.*" (emphasis added)
>
> § 348 "An agent who fraudulently makes representations * * * is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal."

■■■ We stated supra, that defendant Lyon, as the real estate broker who employed Shields and Hubbard as real estate salesmen, may be held liable for misrepresentations with respect to acreage made by his salesmen because such a representation is within the scope of their employment. Nevertheless, defendant Lyon contends he relieved himself from personal liability for the misrepresentations of his salesmen by requiring plaintiffs to execute an exculpatory clause for his benefit in connection with their agreement to purchase the subject property. The language of the alleged exculpatory clause, as found in the purchase contract and receipt form, is as follows:

> "Buyer hereby expressly waives any and all claims for damages because of any representation made by any person whomsoever other than contained in this agreement * * *."

The fallacy of Lyon's contention is made apparent by noting that the specific representation relied upon by plaintiffs was that the property contained 7.8 acres and that such a representation was typed in the very same agreement containing the exculpatory clause. In view of the phrase "other than contained in this agreement", we think the language of the so-called exculpatory clause clearly does not attempt to relieve defendant Lyon from written recitals contained in the agreement itself.

Notwithstanding the sufficiency of the evidence to support a finding by the jury as to each of the respective elements of actionable fraud for misrepresentation as to income and as to acreage, defendants Lux suggest that the trial court was warranted in directing a verdict in their favor because plaintiffs elected to retain the benefits of the contract into which they were fraudulently induced. There was a waiver by plaintiffs of any cause of action they might have previously had as a consequence of the election. Defendants claim plaintiffs did not seek to rescind or repudiate any of their obligations after they learned of the shortage in the acreage but instead, sold the property to another party. It is argued by defendants Lux that such a course of conduct constitutes waiver of any fraud and an estoppel from recovery thereon under the rule stated in Light v. Chandler, supra. As added authority for their proposition, defendants cite us to

Bowman v. Webster, 44 Wash.2d 667, 269 P.2d 960, and Tisdell v. Central Savings Bank, 90 Colo. 114, 6 P.2d 912.

We defined "waiver" in Meason v. Ralston Purina Co., 56 Ariz. 291, 302, 107 P.2d 224, as "a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." The majority of fraud cases in other jurisdictions espouse the rule that where a defrauded party has in part, or at least in substantial part, performed the contract at the time he discovers the fraud, he may proceed with performance and also recover or have the appropriate allowance of damages. The decisions strongly indicate that there is no waiver by the mere proceeding with performance if, when the fraud was discovered, a curtailing or abandonment of performance was not reasonably practicable, or to put it another way, if the defrauded party was in a situation from which he could not recede without prejudice. See Annot., 13 A.L.R.2d 807 (1950).

▮ In the instant case, the record discloses that plaintiffs took possession of the property in September, 1959. They employed a surveyor to make a computation of the actual acreage in the property in December, 1959. Plaintiffs received the surveyor's report around the first of March and this action was filed on March 11, 1960. Plaintiffs resold the property in May, 1961, when by reason of financial distress they were unable to keep up the payments on the contract. They had at that time already paid $25,000 to defendants Lux, invested additional thousands of dollars in improvements on the property and they were obligated to make payments on first, second, and third mortgages, default in any of which would have resulted in their losing their substantial equity in the property. It is our opinion that plaintiffs' situation was such that an abandonment of performance was not reasonably practicable. Nor do we think that plaintiffs' conduct, under the circumstances, evidenced an intentional relinquishment or warranted an inference of relinquishment of their right to recover damages for fraudulent misrepresentations by defendants.

The Bowman and Tisdell cases, supra, cited by defendants are clearly distinguishable from the case at bar by the surrounding circumstances in both as well as by the fact that both involve extended waiting periods between the claimed discovery of the fraud and the bringing of the action. Defendants' reliance on the Light case to support their contention that plaintiffs were required to offer to rescind before suing for damages is also unfounded. In the Light case this Court was concerned with the manner in which a purchaser who had been induced to purchase by fraudulent representations of the owner's agent could hold not the defrauding agent, but the innocent owner-seller. In such a situation the purchaser must first offer to rescind in order to give the owner an opportunity either to take back the transaction or else ratify the actions of his agent. In the event of such ratification, we held the purchaser would have an action for fraud against the owner as well as against the agent.

▮ Herein, in contrast with the situation in the Light case, plaintiffs' claim against defendants Lux is not based simply on fraudulent representations of the Luxs' agents, with respect to which defendants Lux were innocent, but plaintiffs claim by reason of the fraud of the Luxs as well. Plaintiffs are therefore not obligated to first offer recission to defendants if they wish to affirm the contract and seek to hold the defendants for damages.

Having determined that the trial court did err in directing a verdict in favor of each of the defendants, judgment of the lower court is reversed and the cause remanded for a new trial.

STRUCKMEYER, C. J., and BERNSTEIN, V. C. J., concur.