NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

―――――――――――――――

ZADOK ELI, et al., *Plaintiffs/Appellants*,

*v.*

PROCACCIANTI AZ II, LP, *Defendant/Appellee*.

No. 1 CA-CV 22-0760
1 CA-CV 23-0314
(Consolidated)
FILED 07-09-2024

―――――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2018-014021, CV2018-055021
The Honorable Gary L. Popham, Commissioner Judge *Pro Tempore*

**AFFIRMED**

―――――――――――――――

COUNSEL

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, Ross P. Meyer, John D. Wilenchik
*Counsel for Plaintiff/Appellant*

Porter Law Firm, Phoenix
By Robert S. Porter
*Co-Counsel for Plaintiff/Appellant*

Spencer Fane LLP, Phoenix
By Andrew M. Federhar, Jessica A. Gale
*Co-Counsel for Defendant/Appellee*

Osborn Maledon, P.A., Phoenix
By William J. Maledon, Geoffrey M.T. Sturr
*Co-Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

---

**H O W E**, Judge:

¶1　　　　Zadok and Hana Eli (the "Elis") and R.L. Whitmer and Colleen London (the "Whitmers," and collectively with the Elis, the "Homeowners") appeal the superior court's grant of summary judgment to Procaccianti AZ II, LP ("Procaccianti"), Andrew M. Federhar, Spencer Fane, LLP, Gregory Vickowski, and Ron Hadar (collectively, the "Defendants") on their claims of fraud and negligent misrepresentation. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　The Elis and Whitmers are homeowners who lease land from Procaccianti. The Elis and Whitmers are also members of the Hilton Casitas Council of Homeowners (the "HOA"). Over the past decade, the Homeowners and Procaccianti (as well as the HOA and several homeowners not parties to this appeal) have been mired in litigation. *See, e.g.*, *Eli v. Procaccianti AZ II LP*, 1 CA-CV 19-0855, 2021 WL 3088737, at *1 ¶ 3 (Ariz. App. July 22, 2021) (mem. decision) (as amended) ("*Eli II*").

¶3　　　　In 2018, Procaccianti and several of the HOA members, including the Elis, participated in a settlement conference to resolve the litigation. Before the meeting, Procaccianti emailed the Homeowners that it would be able to give the HOA's position at the conference. At the Elis' insistence, however, the HOA did not itself participate in the conference. And at the conference, Procaccianti asked the Whitmers to leave, which they did.

¶4　　　　About an hour before the conference, the HOA's attorney emailed Procaccianti's attorney a non-negotiable settlement offer. But during the conference, Procaccianti's representative stated to the Elis that the HOA had made no settlement offer. No agreement was reached at the conference. Procaccianti's attorney took notes but disposed of them soon after the conference. At subsequent depositions, Procaccianti's representatives at the conference, Gregory Vickowski and Ron Hadar,

testified they had lacked authority to settle but informed the participants that they were interested in what the Elis had to say.

**¶5**　　　　The Homeowners then asserted that the parties had reached an enforceable settlement agreement based on Procaccianti's attorney's notes. Procaccianti filed a declaratory judgment action (the "Declaratory Action") to declare that no enforceable agreement was reached. In answer to Procaccianti's complaint, the Homeowners filed several counterclaims alleging, as relevant, fraud and negligent misrepresentation against Procaccianti and its attorneys for both their lack of disclosure of the HOA's offer and their purportedly false intention to make a settlement agreement. Shortly thereafter, the Homeowners sued Procaccianti, alleging substantially similar claims as their counterclaims in the Declaratory Action (the "Tort Action").

**¶6**　　　　In the Declaratory Action, the superior court granted Procaccianti relief, which this court affirmed in *Eli v. Procaccianti AZ II LP*, 1 CA-CV 20-0476, 2021 WL 3743817 (Ariz. App. Aug. 24, 2021) (mem. decision) ("*Eli I*"). However, before the resolution of the appeal in the Declaratory Action, the superior court denied Procaccianti's motion for summary judgment in the Tort Action.

**¶7**　　　　In *Eli I*, we determined that the Tort Action asserted "substantially the same claims as their counterclaims in the Declaratory Action." *Eli I*, 2021 WL 3743817, at *2 ¶ 8. This court determined further that those counterclaims "were dependent on the court finding an enforceable agreement was reached at the [settlement] meeting." *Id.* at *3 ¶ 19. This court also determined that the Whitmers were proper parties to the appeal, even though the Whitmers did not participate in the settlement conference, explaining that

> [i]n their counterclaims, the Whitmers asserted the Hotel had an obligation to communicate the HOA's settlement offer to the Homeowners, and alleged they would have agreed to the HOA's offer had the Hotel informed them of the terms. The Whitmers sought benefit-of-the-bargain damages based on an alleged missed opportunity to settle with the HOA. However, the record shows that the HOA had no interest in settling anything less than all of the outstanding cases with Homeowners. Instead, the HOA wanted a global settlement disposing of all claims and all parties. That being the case, to be entitled to benefit-of-the-bargain damages, the Whitmers would need to establish that the Hotel and the HOA would

have settled not only with them, but with all of the Homeowners.

*Id.*

**¶8**        After *Eli I* was issued, Defendants moved to reconsider the superior court's denial of summary judgment, which the court granted. The court then granted Defendants summary judgment on all claims of the Homeowners' Tort Action. The court found the HOA "had no interest in settling anything less than all of the outstanding cases with the Homeowners," and so the Homeowners could not make the necessary showing on their claims. The court also granted Defendants attorneys' fees under A.R.S. § 12-341.01 because it determined the Homeowners' "tort claims could not exist absent 'the breach or avoidance of contract'—the alleged promise by Defendants to deliver to Plaintiffs the HOA's settlement terms." The Homeowners then moved for a new trial under Arizona Rule of Civil Procedure ("Rule") 59, which the court denied, and appealed the court's grant of summary judgment and denial of the motion for new trial.

**¶9**        While this appeal was pending, Defendants and the Homeowners again entered settlement discussions via email to resolve outstanding litigation. On January 24, 2023, Defendants emailed the Homeowners that "until there is a final signed fully executed settlement agreement, there is no settlement between the parties." On January 26, 2023, Defendants emailed the Homeowners, that "my clients propose the following as settlement terms . . . subject to a suitable settlement agreement. The offer will remain open only ***until 3 pm. tomorrow Friday. January 27, 2023 MST.***" (Bolding in original.) The Homeowners agreed the next day, and the parties filed a joint stipulation that "[t]he Parties have reached a settlement agreement in principle. The Parties are currently working to draft and execute the settlement agreement." The Homeowners also proposed treating the January 26 email as a Rule 80 enforceable agreement, but Defendants rejected the proposal. After further negotiation, the parties could not reach a final agreement and Defendants withdrew their offer.

**¶10**        The Homeowners then moved to enforce settlement ("Enforcement Action") based on the terms of the January 26 email, which the superior court denied. This court stayed the appeal of the Tort Action pending the outcome of the enforcement motion. The superior court denied the motion, finding "a necessary, material condition precedent of any settlement agreement to be reached between the parties—*i.e.*, a final signed, fully executed settlement agreement—is lacking and, as such, there is no

settlement agreement to enforce." The court further explained that "[n]o agreement beyond the agreement to agree was reached."

¶11            The Homeowners appealed the denial of its motion to enforce, which this court consolidated with the appeal from the Tort Action. This court has jurisdiction under A.R.S. § 12-2101(A)(1), (2), (5)(a).

## DISCUSSION

¶12            In their opening brief, the Homeowners argue the superior court erred by granting Defendants' motion for summary judgment but do not address the denial of their motion for new trial. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo and view the evidence and reasonable inferences in a light most favorable to the Homeowners as the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022).

## I.     Issue Preclusion

¶13            Defendants argue that the Homeowners' claims fail because in *Eli I* this court determined the Homeowners would have to prove an enforceable bargain existed to prevail on their tort claims. Defendants contend that the Homeowners are precluded from arguing they are entitled to benefit-of-the-bargain damages because "[t]he Homeowners have already litigated [in *Eli I*] the issue of whether there was an enforceable settlement contract and lost."

¶14            The Homeowners dispute that *Eli I* required them to demonstrate the parties agreed to an enforceable bargain to succeed on their claims or to assert benefit-of-the-bargain damages. Specifically, the Homeowners argue *Eli I* lacks preclusive effect because it did not address their claims alleging the Defendants' attorneys fraudulently and negligently misrepresented their authority to settle, i.e., the third and fourth counts of their third amended complaint in the Tort Action. And as to damages, they argue the full evidentiary record in the Tort Action was not before the *Eli I* court in the Declaratory Action, which would have "established that a litigation ending agreement would have been reached — had the HOA offer been disclosed." They contend that the superior court wrongly expanded the definition of "Homeowners" from *Eli I* to include several legal entities who were not parties to the Tort Action as Homeowners required to settle.

**¶15**          "Issue preclusion is a judicial doctrine that, when applicable, prevents a party from relitigating an issue of fact decided in a prior judgment." *Hancock v. O'Neil*, 253 Ariz. 509, 512 ¶ 10 (2022). Issue preclusion applies when "(1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223 ¶ 9 (App. 2003).

**¶16**          In *Eli I* this court determined that the Homeowners "assert[ed] substantially the same claims [in the Tort Action] as their counterclaims in the Declaratory Action." *Eli I*, 2021 WL 3743817, at *2 ¶ 8. This court determined further that those counterclaims "were dependent on the court finding an enforceable agreement was reached at the [settlement] meeting." *Id.* at *3 ¶ 19. This holding did not distinguish between the Homeowners' various counterclaims. *See id.* Although the Homeowners argue *Eli I* had "nothing to do with" the third and fourth counts of the Tort Action, these claims are virtually identical to the Homeowners' fifth and sixth counterclaims to Procaccianti's complaint in the Declaratory Action at issue in *Eli I*. Because no enforceable agreement was reached at the settlement conference, the Homeowners are precluded from relitigating the viability of their claims.

**¶17**          *Eli I* also precludes the Homeowners from asserting damages independently of its preclusive effect on the substantive claims. As this court explained, because "the HOA had no interest in settling anything less than all of the outstanding cases with Homeowners . . . to be entitled to benefit-of-the-bargain damages, the Whitmers would need to establish that the Hotel and the HOA would have settled not only with them, but with all of the Homeowners." *Id.*

**¶18**          Because this court decided the Homeowners would need to establish that Procaccianti, and not just the HOA, would have agreed to settle to be entitled to benefit-of-the-bargain damages, the definition of "Homeowners" and additional record are not dispositive issues. Here, Procaccianti denies it ever would have agreed to a settlement. Accordingly, the Homeowners are precluded from arguing they are entitled to benefit-of-the-bargain damages.

## II. Damages

**¶19** Defendants argue that even if the Homeowners are not precluded from arguing an entitlement to benefit-of-the-bargain damages, to be so entitled they must have had an enforceable bargain. The Homeowners respond that tort damages for fraud and negligent misrepresentation do not require an enforceable contract. Because of the Homeowners' long history of litigation, we also address the merits of benefit-of-the-bargain damages to avoid future disputes between the parties.

**¶20** A bargain is "[a]n agreement between parties for the exchange of promises or performances." *Bargain*, Black's Law Dictionary (11th ed. 2019); *see also* Restatement (Second) of Contracts § 3 (1981) ("A bargain is an agreement to exchange promises or to exchange a promise for a performance or to exchange performances."). Actions for fraud and negligent misrepresentation permit the plaintiff to recover for "the difference between the real value of the property purchased and the value it would have had had the representation been true." *Carrel v. Lux*, 101 Ariz. 430, 436 (1966) (citing *Lutfy v. R. D. Roper & Sons Motor Co.*, 57 Ariz. 495, 503 (1941)); *see also Armiros v. Rohr*, 243 Ariz. 600, 606 ¶ 24 (App. 2018); *Aspen Biotech Corp. v. Wakefield*, 1 CA-CV 20-0384, 2021 WL 3503399, at *14 ¶ 70 (Ariz. App. Aug. 10, 2021) (mem. decision).

**¶21** Whether benefit-of-the-bargain damages require the existence of an enforceable agreement has not been directly decided in Arizona. But because benefit-of-the-bargain damages are measured against the value of property already purchased, however, the existence of an agreement or contract is implicitly required. In all the cases addressing benefit-of-the-bargain damages, the plaintiffs sought damages based on an already existing contract or agreement. *See*, *e.g.*, *Carrel*, 101 Ariz. at 436; *Lutfy*, 57 Ariz. at 502–03; *see also Aspen Biotech*, 2021 WL 3503399, at *14 ¶ 70. Decisions from other states have likewise held that a plaintiff cannot recover benefit-of-the-bargain tort damages without an enforceable contract. *See*, *e.g.*, *LCT Cap., LLC v. NGL Energy Partners LP*, 249 A.3d 77, 93 (Del. 2021) (as corrected); *Goldstein v. Miles*, 859 A.2d 313, 327 (Md. App. 2004) ("While our appellate courts have not expressly required the existence of a 'bargain' to obtain benefit-of-the-bargain damages in fraud and negligent misrepresentation cases, they have done so impliedly by only recognizing the legitimacy of such damages in fraud and negligent misrepresentation cases in which there was an actual contract between the parties."). The Homeowners do not point to any Arizona decision permitting a plaintiff to recover benefit-of-the-bargain damages for a

bargain they *failed* to enter because of fraud or negligent misrepresentation. We decline to extend the law here. The superior court thus did not err.

¶22        The Homeowners also argue that they are entitled to consequential and punitive damages for their fraud claims. But they do not develop their argument, or cite authority, that they are independently entitled to consequential or punitive damages in the absence of benefit-of-the-bargain damages. The Homeowners have therefore waived any claim to non-benefit-of-the-bargain damages. *See Ritchie v. Krasner*, 221 Ariz. 288, 305 ¶ 62 (App. 2009) (explaining that failure to present and address arguments supported by authority can constitute abandonment and waiver of the claim).

## III.    Enforcement Action

¶23        The Homeowners argue that the superior court erred by denying their motion to enforce the purported 2023 settlement. They argue Defendants were required to (but did not) produce a settlement agreement containing the terms as outlined in the January 26, 2023 email correspondence. The superior court denied the Homeowners' motion because it found the parties had not signed a final, fully executed agreement and "as such, there is no settlement agreement to enforce."

¶24        We review the denial of a motion to enforce de novo. *Perry v. Ronan*, 225 Ariz. 49, 52 ¶ 7 (App. 2010). "Construction and enforcement of settlement agreements . . . are governed by general contract principles." *Emmons v. Superior Court*, 192 Ariz. 509, 512 ¶ 14 (App. 1998).

¶25        The Homeowners argue "there was an agreement on all terms, not just material terms," and "the January 26, 2023 email is so thoroughly written that there are no other terms that would need to be drafted or determined." Further, they emphasize that, on January 27, 2023, the parties filed a joint stipulation that "[t]he Parties have reached a settlement agreement in principle. The Parties are currently working to draft and execute the settlement agreement."

¶26        But the joint stipulation merely confirms that the Homeowners agreed to the January 26 email. And the full correspondence between Defendants and the Homeowners demonstrates that Defendants never intended the January 26 email to represent a final, executed settlement agreement. On January 24, 2023, Defendants emailed the Homeowners and explicitly stated, "until there is a final signed fully executed settlement agreement, there is no settlement between the parties." Further, Defendants stated in the January 26 email itself, "my clients

8

propose the following as settlement terms . . . *subject to a suitable settlement agreement*." (Emphasis added.) When the Homeowners proposed treating the January 26 email as a Rule 80 agreement, Defendants again affirmed that they wanted a final signed agreement. Thus, although the Homeowners may have viewed the January 26 email as sufficiently definite, Defendants at most intended the email to constitute an agreement to agree. *See Ripps v. Mueller*, 21 Ariz. App. 159, 160 (1973) ("[A]greements to make an agreement are not specifically enforceable when material terms are left to future negotiation."); *see also Schade v. Diethrich*, 158 Ariz. 1, 9 (1988) (noting that the certainty of terms goes to the "ultimate element of contract formation—the question whether the parties manifested assent or intent to be bound"). Because Defendants did not intend the January 26 email to constitute an enforceable agreement, the court did not err by denying the Homeowners' motion.

## IV.    Attorneys' Fees

### A.    Arising Out of a Contract

¶27        The superior court awarded Defendants attorneys' fees under A.R.S. § 12-341.01 because it found the Homeowners' "tort claims could not exist absent 'the breach or avoidance of contract'—the alleged promise by Defendants to deliver to Plaintiffs the HOA's settlement terms." The Homeowners argue that the superior court erred in awarding fees because their claims for fraud and negligent misrepresentation are based on duties imposed by tort law and not contract. The application of A.R.S. § 12-341.01 is a question of statutory interpretation, which we review de novo. *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13 ¶ 12 (App. 2000).

¶28        Section 12-341.01(A) permits the award of attorneys' fees in actions "arising out of a contract." The superior court may award fees in a tort action as long as the action "could not exist but for the breach of the contract." *Sparks v. Rep. Nat'l Life Ins. Co.*, 132 Ariz. 529, 543 (1982). In applying the *Sparks* test, the court should look not just at the "form of the pleadings," but also "the nature of the action and the surrounding circumstances." *Ramsey Air Meds*, 198 Ariz. at 14 ¶ 21 (quoting *Marcus v. Fox*, 150 Ariz. 333, 335 (1986)). "The statute does not apply if the contract is only a factual predicate to the action but not the essential basis of it." *Kennedy v. Linda Brock Auto. Plaza, Inc.*, 175 Ariz. 323, 325 (App. 1993). Further, "[w]hen the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract." *Ramsey Air Meds*, 198 Ariz. at 15 ¶ 27. Thus, "[t]he test is whether

9

the defendant would have a duty of care under the circumstances even in the absence of a contract." *Id.* at 16 ¶ 27.

**¶29** The Homeowners brought two claims of fraud and negligent misrepresentation against the Defendants in which they alleged the Defendants falsely represented that the HOA had not made a settlement offer. The Homeowners claim had the HOA settlement offer been disclosed, they would have agreed to the offer and have thus suffered pecuniary losses as a result of the lack of disclosure. Although the Homeowners argue that tort law imposes the duty not to commit fraud or negligent misrepresentation, their claims for damages are dependent upon the creation of a contract—in the absence of the HOA's offer, by definition, Defendants would have lacked any offer to disclose. In other words, Defendants' alleged duty to disclose would not exist "but for" the existence of a contract. The superior court did not err by determining the Homeowners' claims arose out of a contract.

## B. Federhar

**¶30** The Homeowners argue that the superior court also erred in awarding $161,450 in attorneys' fees for work completed by attorney Andrew Federhar on his own behalf while he was a defendant in the Tort Action. The Homeowners also argue the amount awarded for Federhar's work was unreasonable because another attorney for Defendants, Geoffrey Sturr, charged $70,948 for his work during the same period. We review the amount of an award of attorneys' fees for an abuse of discretion. *Ramsey Air Meds*, 198 Ariz. at 13 ¶ 12.

**¶31** The Homeowners do not identify any specific improper time-entries, and their one record citation to a minute entry denying their motion to pierce Federhar's attorney-client privilege does not support that Federhar's work was in representation of himself and not Procaccianti. By contrast, as Defendants note, Federhar submitted a declaration with Defendants' fee application stating his law firm was retained as co-counsel on behalf of Procaccianti. Because Procaccianti's application for attorneys' fees included detailed time entries and a supporting affidavit, "the burden shifted to [the Homeowners] to demonstrate that particular entries were inappropriate or unreasonable." *Rudinsky v. Harris*, 231 Ariz. 95, 102 ¶ 33 (App. 2012). Thus, even if some of Federhar's representation was on his own behalf, the Homeowners' general objection to the fee award fails to overcome their burden. The trial court thus did not abuse its discretion in awarding $161,450 in attorneys' fees to Procaccianti for Federhar's representation.

## V.    Attorneys' Fees on Appeal

**¶32**        Defendants request attorneys' fees as sanctions under A.R.S. § 12-349 and ARCAP 25. Defendants also seek their attorneys' fees under A.R.S. § 12-341.01 and costs under A.R.S. § 12-341.

**¶33**        As discussed, *supra* ¶¶ 27–29, because the Defendants were the successful party in a "contested action arising out of a contract," we award Defendants their reasonable attorneys' fees under A.R.S. § 12-341.01. We also award Defendants, as the successful party, their reasonable costs upon compliance with ARCAP 21. Because we award Defendants their reasonable attorneys' fees under A.R.S. § 12-341.01, we do not address their request under A.R.S. § 12-349.

## CONCLUSION

**¶34**        We affirm.

