[Civil No. 4312.   Filed July 7, 1941.]

[115 Pac. (2d) 161.]

LOUIS P. LUTFY, Appellant, v. R. D. ROPER & SONS MOTOR COMPANY, a Corporation, Appellee.

Mr. Wm. P. Lutfy and Messrs. Cox and Cox, for Appellant.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe and Mr. Harold E. Whitney, for Appellee.

McALISTER, J.—Appellant, Louis P. Lutfy, filed a complaint against R. D. Roper & Sons Motor Company, a corporation, setting up two causes of action. In the first he sought damages in the sum of $1,000 for the sale to him of a Cord automobile, 1936 model, upon the false representation that it was a 1937 model and, in the second, $500 as punitive damages for its wanton, fraudulent and malicious misrepresentation made for the purpose of defrauding him.

Appellant owned a 1936 automobile which he decided in 1937 to trade in on a Cord sedan. In Phoenix the Cord was handled by appellee and its place of business was at 541 West Adams street, so in March of that year appellant called there and asked to see its new model Cords and several different ones were shown him. On March 15, after four or five interviews with appellee's agents, the deal was consummated and a contract of conditional sale executed by the parties. By its terms appellant agreed to pay for the Cord sedan $2,410 as follows: $1,110 by turning in his Oldsmobile, $800 in cash and $500 in eleven monthly installments of $47.40 each. The contract did not describe the model of the car by specifying the year of its manufacture but referred to it as "Model 810." The yearly models of the Cord were indicated by numbers, the particular year of manufacture not appearing on the car at all. For instance, model 810 meant a 1936 model, and model 812 a 1937 model.

The contract of sale contained, among others, the following provision:

"It is understood and agreed that there is no representation or warranty that the 'year model' of said property, as hereinbefore stated, correctly states the year in which said property was manufactured, but is merely used by the parties hereto for convenience in describing it. It is further understood and agreed that this contract contains the complete contract be-

tween the parties hereto, and that there are no representations or warranties, express or implied, which are not herein contained and Purchaser agrees that he has made an independent investigation of the property and has relied solely upon his own investigation with reference thereto in entering into this contract, and has placed no reliance and acted upon no representations or warranties upon the part of the Seller."

It appears that after appellant had been driving the car about four weeks he was told by a garageman who was servicing it that the number 810 meant a 1936 model. He immediately wrote the manufacturer at Auburn, Indiana, describing the car and asked if an 810 Cord was a 1936 or a 1937 model and the company replied that all 810 Cords were 1936 models and all 812 Cords 1937 models. A copy of this reply was sent to appellee and a few days later appellant, accompanied by his brother and a friend, called at appellee's place of business and demanded that it reimburse him for the damages he had sustained as a result of selling him a 1936 instead of a 1937 model. Appellee refused to comply, denying that it had made any such representation, and thereafter this action was filed.

Appellant testified that on his first visit to appellee's place of business he asked Mr. Miner, the agent who showed him the Cords, if they were 1937 models and that the latter assured him they were, calling his attention at the time to a picture on the wall which contained in large letters "1937 Cord automobile" and, while pointing out to him various identical features, requested him to compare the car on the floor with the one on the chart. He testified further that at the time of the execution of the contract the agent told him that the number 810 meant a 1937 model and that he accepted this as true the same as he had the other statements that the car was a 1937 model. The agent testified, upon the other hand, that

nothing was said about the year of the model at the first interview, though he claimed that in a later conversation he told appellant the car was a 1936 model but that there was no difference between the 1936 and the 1937. Most of the testimony was directed toward the vital question whether the Cord purchased by appellant was represented to him by appellee as a 1937 model, and it is not necessary to say more of the evidence pertaining to that phase of the case than that it is sufficient to support a finding either way. And in view of this, appellee contends that under our unvarying rule the jury's finding in its favor thereon renders an affirmance of the judgment necessary. This would undoubtedly be true if the record were such that no other conclusion could be deduced from the finding in favor of appellee than that the jury believed that its agent did not represent to appellant that the car was a 1937 model, but in view of the evidence and the following instruction one cannot say with certainty that such was the jury's conclusion on this question:

"If you should find, gentlemen of the jury, by a preponderance of the evidence that is clear and convincing that the defendant misrepresented the year model of the Cord automobile in issue in this action and find all the elements of fraud that I have instructed you about, the measure of damages will be the difference between the contract or purchase price of the 1936 Cord and the actual or market value thereof upon the 15th day of March, 1937.

"If you further believe from the evidence that the defendant allowed to the plaintiff a sum in excess of the actual value of the Oldsmobile coupe as a trade-in value, then you may also take into consideration such excess allowance by way of mitigation or reduction of damages, if you find there has been any damage."

Appellant had paid $1,150 for his Oldsmobile but, according to the testimony of several of appellee's wit-

nesses, its value in March, 1937, was only $650, yet in the trade appellee allowed him $1,110 for it, an excess of $460 in value. However, the difference in the value of a new 1936 and a new 1937 Cord sedan in March, 1937, was, according to the testimony of R. D. Roper, $400, though some of the witnesses placed it as low as $200 or $225. It is plain, therefore, that the jury could have believed that appellee did represent the Cord as a 1937 and that in consequence appellant was entitled to damages in the sum of $200, $225 or $400, but that under the foregoing instruction appellee had the right to offset whichever amount was proper with the $460 excess it had allowed him on his Oldsmobile. This view could only have resulted in a judgment for appellee, because the $460 would have wiped out appellant's damage and, carried to its logical conclusion, would have meant that appellee could not only offset his damage with the $460, but would have entitled it to judgment against appellant for the balance of the difference between these two items had it asked therefor in a cross-complaint. The instruction was erroneous. The value of the Oldsmobile at that time was wholly immaterial and evidence relating to it had no place in the record. Appellee took it in satisfaction of $1,110 of the consideration of $2,410 appellant was paying for the Cord and, whether this was more or less than its actual value at that time, did not affect the situation in the slightest degree. If appellee saw fit to allow appellant $460, or any other amount above its actual value, no matter how much, as "bait" or as an inducement to him to purchase a 1936 Cord for $2,410, which was from $200 to $400 more than its actual value at that time, there is no principle of law that would deprive him of the benefit of this excess or permit appellee to use any part of it to offset the damages caused by a misrepresentation as to the year model of the car it was selling him.

Immediately preceding the statement to the jury that it could consider the excess on the Oldsmobile in mitigation or reduction of damages, if it found there had been any, the court instructed the jury that the measure of damages would be "the difference between the contract or purchase price of the 1936 Cord and the actual or market value thereof upon the 15th day of March, 1937," and appellant contends that this was error. It was given in lieu of an instruction requested by him, which stated the measure of damages to be "the difference between the value of the automobile, which defendant delivered to the plaintiff, and the value of the automobile which he represented he was delivering." Under the instruction given the damages would be the difference between the sale or contract price of the 1936 Cord, $2,410, and its actual value on March 15, 1937, which R. D. Roper and another testified was about $2,000. Under the requested instruction the damages would have been the difference between the value of the car sold to appellant, the 1936 Cord, and the value of the car appellee represented it was selling, that is, the 1937 Cord, the price of which is not clear, though one of the witnesses placed it at $2,635. This instruction gave the proper measure of damages, if the year model of the car was misrepresented to appellant, namely, the difference in value between a 1936 and a 1937 Cord sedan on March 15, 1937, and the jury should have been so advised. *Curry* v. *Windsor*, 22 Ariz. 108, 194 Pac. 958; *Ren* v. *Jones*, 38 Ariz. 476, 1 Pac. (2d) 110; *Hidalgo* v. *McCauley*, 50 Ariz. 178, 70 Pac. (2d) 443. The rule followed by the court in these cases and in most jurisdictions is stated as follows in 27 C. J. 92, section 243:

"The measure of the damages sustained by the purchaser where a purchase has been induced by fraud, is according to the weight of authority, the difference between the real value of the property purchased and

the value which it would have had had the representations been true.''

Appellant's testimony is that he did not want and did not intend to buy a 1936 car, hence, his damage would not be measured by the difference between the actual value and the amount paid for the car he did not want or know he was buying but rather by the difference in value between the one he bought and the one he wanted and was told by the seller he was getting but did not. Under the instruction given the value of the car appellant wanted and thought he was buying is not an element for consideration in arriving at the damages suffered, but it is plain that it is as necessary to a determination of this question as the value of the car purchased is.

A few courts have ''adopted the view that the measure of damages for fraud inducing a contract for the purchase or exchange of property is the difference between the actual value of the property acquired by the plaintiff, at the time of the making of the contract, and the purchase money or other consideration parted with by him.'' Annotation at 124 A. L. R. 52. And wherever this rule is the guide the defrauded party may recover only the amount he is ''out of pocket'' and is not entitled to the ''benefit of the bargain,'' the rule prevailing in this jurisdiction. The principal authorities cited by appellee bearing directly on this question are from jurisdictions in which the ''out of pocket'' rule seemingly prevails.

██ The refusal of the court to submit to the jury the question of punitive or exemplary damages is made the basis of the second assignment, the contention being that there was sufficient evidence of willful misrepresentation and fraud to justify the court in submitting to the jury the question of punitive damages. The general rule is that ''the allowance of exemplary or punitive damages is based on aggravated, wanton, reckless,

or maliciously intentional wrongdoing." 24 Amer. Jur. 51, section 222. The particular portion of this rule, if any, that would apply here is that appellee's wrongdoing was "maliciously intentional," but this could not be true in the sense that there was ill will or spite, for this did not exist. However, it is contended that malice in its legal sense, that is, the intentional doing of a wrongful act without justification or excuse, was present, and that this is sufficient. *Sorenson* v. *Chevrolet Motor Co.*, 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35. Even though this be true, it occurs to us that where, as in this jurisdiction, the "benefit of the bargain" as distinct from the "out of pocket" rule applies, punitive damages should not be allowed, unless the conduct of the wrongdoer is wanton, reckless or shows spite or ill will. In Texas, for instance, where the latter rule prevails, punitive damages may be recovered. *Northside Chevrolet Co.* v. *Beekman,* (Tex. Civ. App.) 80 S. W. (2d) 1071.

■■ On August 9, 1937, appellant purchased in Los Angeles a supercharged 1937 Cord for which he paid $3,400 and the seller took his 1936 Cord in part payment of this amount. When asked upon cross-examination if he did not get $1,800.87 for his Cord the question was objected to upon the ground that it was not the proper measure of damages and the court seemingly agreed that this was true but permitted an answer "on the question of impeachment of this man's testimony as to the value. He made a statement his independent judgment was it was worth eleven hundred and some dollars." His answer was "yes." The $1,800.87 was a trade-in value on a $3,400 car and when asked on redirect if he knew at the time he made the trade that the Cord automobile company was not going to make any more cars, an objection was sustained upon the ground that "its value would be so remote it would be dangerous to have

the jury consider it.'' The fact that he received $1,800.87 was not under the circumstances admissible even to impeach a prior statement by him that it was worth eleven hundred and some dollars, because that was a trade-in value on a high priced model of the same car and there is a wide difference between the actual and trade-in value, particularly in the case of cars of this class. Especially would this be true where it appears that the manufacture of the car involved had been discontinued. However, if the fact appellant received $1,800.87 for his 1936 Cord had been admissible for the purpose of impeachment, it would clearly have been his right to introduce evidence of any fact that would tend to explain why he had been allowed this amount, and the discontinuance of the manufacture of the car involved, if true, would have been one of these.

The provision in the contract of sale quoted above relative to the year model of the car and the completeness with which it states the agreement between the parties was pleaded as a special defense and one of appellant's assignments is based on the action of the court in overruling his demurrer to that defense. The statement in this provision that it is agreed that there is no representation that the year model of the car correctly states the year of manufacture was foreign to the question presented, because the ''year of manufacture'' and the ''year model'' are by no means the same thing, and both parties were interested only in the latter. An 810 Cord, for instance, meant, it is agreed, a 1936 model, but the particular car sold appellant may have been manufactured in 1935 because the 1936 model was planned and in all probability many of that particular style were manufactured and placed on the market during the latter months of 1935, for this is the course usually followed by automobile manufacturers.

The second part of this provision states, however, that it is agreed between the parties that the contract contains the complete contract, that in entering into it the purchaser relied solely on his own independent investigation of the car and placed no reliance on or acted upon representations made by the seller, and appellant contends that this amounts to a waiver of any fraud that could have been practiced or misrepresentations made in procuring the execution of the contract and that it is, therefore, unenforceable, because one may not contract against his own fraud. If binding upon appellant, if would protect appellee from the consequences of any fraudulent misrepresentations it might have made to appellant to induce him to sign the contract and, as we see it, any provision in a contract making it possible for a party thereto to free himself from the consequences of his own fraud in procuring its execution is invalid and necessarily constitutes no defense. In this case, for instance, appellee's agent could, as appellant testified he did, have told him in the beginning of the negotiations that the car was a 1937 and later when the contract was signed that the 810 model designated therein meant a 1937, and he would have been denied the right to show the falsity of this statement, notwithstanding he had relied thereon for knowledge of the year model, because there was no other way he could ascertain this fact, since the contract itself was silent on the question and only appellee knew that 810 meant a 1936 model. The demurrer to the special defense should have been sustained.

The trial court held, over appellee's objections, that this provision did not prevent appellant from giving his version of the transaction by oral testimony, for it permitted him to testify fully relative to the oral statements as to the year model and properly so, because parol evidence is always admissible

to show fraud, and this is true, even though it has the effect of varying the terms of a writing between the parties. *Arnett* v. *Sanderson,* 25 Ariz. 433, 218 Pac. 986; *L. C. James Motor Co.* v. *Wetmore,* 36 Ariz. 382, 286 Pac. 180; *Mooney* v. *Cyriacks,* 185 Cal. 70, 195 Pac. 922.

Judgment reversed and cause remanded for a new trial.

LOCKWOOD, C. J., and ROSS, J., concur.