423 P.2d 100

Rex L. COLE and Helga S. Cole, husband
and wife, Appellants,

v.

Herbert GERHART and Lorena Gerhart,
husband and wife, Appellees.

No. 2 CA–CIV 196.

Court of Appeals of Arizona.

Jan. 27, 1967.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears, by Harry
J. Cavanagh, Phoenix, for appellants.

Williams & Ryan, by Martin F. Ryan,
Tucson, for appellees.

MOLLOY, Judge.

This is an appeal from an order granting
a new trial in a civil action arising out of

the sale of a 160 acre farm in the "Kansas Settlement" area of Cochise County. A trial to a jury had resulted in a verdict in favor of the purchaser in the sum of $15,-000 on a complaint charging fraud in the inducement of said contract.

The fraud charged in the complaint was that the sellers had represented that the irrigation well upon the property was capable of producing 1,000 gallons per minute, and that the domestic well upon the property was capable of producing all of the domestic water needed. At the trial there was sufficient evidence produced from which the jury could have found that the sellers knew at the time of the sale in the spring of 1962 that the water table in the particular area was falling and that this well, which had previously had a production capacity in excess of 1,000 gallons per minute, was so depleted at the time of sale that its maximum capacity was substantially less. There was also evidence from which the jury could have found that the seller represented, both personally and through a real estate broker, that the irrigation well in question was producing 1,000 gallons per minute at the time of sale.

The purchasers proved that irrigated land in this area, with a well sufficient to supply necessary irrigation water thereto, was worth $250 per acre and that undeveloped acreage in this area was worth $100 per acre. The purchasers contended that they were entitled not only to the difference in value between irrigated land and undeveloped land but also to recover monies expended in an attempt to improve the well in question up to the capacity necessary to irrigate the land in question, and also to recover for crop losses for the year of sale and subsequent years. Some of such evidence was admitted without objection but the jury was subsequently instructed by the trial court to disregard same, on the theory that the purchasers were only entitled to recover the "benefit-of-the-bargain," that is, the difference between the actual value of the property in question in the condition that it was sold and the value of the same

property as it would have been if it had been as represented by the sellers.

In granting a new trial as to all issues, the trial court specified his reasons for so doing as follows:

"(a) That the verdict is not justified by the evidence for the reason that the amount of the verdict in favor of plaintiffs, to-wit, $15,000.00, ignores the measure of damages in accordance with the instructions of the Court and indicates strongly that the jury based its verdict upon evidence regarding the cost to the plaintiff of his efforts to improve the well over some period of time after completion of sale and regarding crop losses for the year of sale and the following year or years, which evidence should not have been received.

"(b) That the Court erred in the admission of plaintiff's exhibit 3A, the listing prepared by Johnson & Johnson, defendants' brokers, for the reason that the record fails to show that the representation therein that the well would produce 1,000 gpm was authorized by the defendants; and that during the trial the Court declined to strike the same from the record and to instruct the jury to disregard the same because the Court felt that no amount of instruction could remove the effect thereof from the minds of the jury; the said exhibit 3A having been admitted over the defendant's objection and contrary to the ruling in G. P. Light etc. vs. Chandler Improvement Co., 33 Arizona 101."

■ The purchasers contend on appeal that there was sufficient evidence in the record to support the jury's verdict under the strict "benefit-of-the-bargain" rule upon which the jury was instructed by the trial court. The purchasers arrive at this result by computing from the results of a well test conducted some six weeks after the closing of the sale, which showed a capacity of the well in question of 680 gallons per minute. From this, and using an alleged finding of the jury that land rendered unirrigable by the well deficiency

was worth $30.70 per acre, they arrive at a damage computation of exactly $15,000. We find the computation faulty, both because it allows no value whatsoever to the home included in the sale, but, more importantly, because the record is devoid of any evidence that any kind of land in this area, irrigated or unirrigated, developed or undeveloped, or in any other state, is worth less than $100 per acre.

In other portions of their brief, the purchasers argue that a well test made approximately seven months after the closing of the sale, at which time this well was tested at 372 gallons per minute, could be used in arriving at the amount of damages awarded by the jury. However, even if this measurement is used, the evidence indicates that only ninety-nine acres would be rendered unirrigable by the deficiency of 638 gallons per minute. Using this well capacity seven months after the sale, the maximum damage under the instructions of the court would be $14,850.

■ The purchasers further argue that there was evidence in the record that they had expended $10,277.99 in an effort to get water to irrigate this farm and that they had sustained crop losses prior to trial because of the failure of the well to come up to representations. They argue that the trial court wrongfully construed the "benefit-of-the-bargain" rule of damages in eliminating these expenditures from the jury's consideration. We are in agreement that the trial court's concept of the rule of damages in a fraud case was erroneous and that at least some of the evidence of other loss sustained by the plaintiffs should have been considered by the jury.

This state has adopted the "benefit-of-the-bargain" rule in fraud cases, Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941). The rule has been adopted to provide for fuller recompense to persons defrauded, not to limit damages proximately sustained as a result of fraudulent conduct. Massachusetts has been a pioneer state in establishing the rule of damages under discussion. See McCormick on Damages, § 121, p. 450 (1935). In the early case of Morse v. Hutchins, 102 Mass. 439 (1869), Judge Gray stated:

> "To allow to the plaintiff * * * only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the benefit of the wrongdoer; and, in proportion as the original price was low, would afford a protection to the party who had broken, at the expense of the party who was ready to abide by, the terms of the contract."

102 Mass. at 440.

And see United States v. Ben Grunstein & Sons Company, 137 F.Supp. 197 (1956).

■ We have been cited no decision holding that because the "benefit-of-the-bargain" rule has been adopted, other fundamental rules of damage must be thrown out the window. In fact the writers in this area are unanimously in accord with the granting of other consequential damages that may arise from the fraudulent conduct of the vendor. Professor Prosser, an advocate of the "out-of-pocket" rule, states in his Law of Torts § 105, p. 752 (3d ed. 1964):

> "In addition to such a normal measure of damages *under whatever rule the court may adopt*, the plaintiff may recover for consequential damages, such as personal injuries, damage to other property, or expenses to which he has been put, provided that they are regarded as 'proximate' results of the misrepresentation." (Emphasis added)

Accord, Williston on Contracts (Williston & Thompson rev. ed. 1937), Vol. 5, § 1393, p. 3887; McCormick on Damages § 122, p. 455 (1935); Sedgewick on Damages, Vol. 3, § 1027(a), p. 2147 (9th ed. 1920); Sutherland, Law of Damages, Vol. 4, § 1173, p. 4412 (4th ed. 1916).

■ A leading case in this area is that of Selman v. Shirley, 161 Or. 582, 85 P.2d 384 (1938); supplemental opinion 161 Or.

582, 91 P.2d 312, 124 A.L.R. 1, 16 (1939). In that case the Oregon Supreme Court stated:

"We are likely to become so engrossed in efforts to formulate a rule of damages capable of precise application in all future cases and incapable of misapplication in any, that we may lose sight of our real duty in the present case; which is to sift out the charges of fraud, and, if it then appears that the alleged wrongdoer is guilty of the charges made against him, to enter judgment against him for all damages which are the proximate result of the wrong which he committed. * * *

"Regardless of whether the out-of-pocket-loss rule or the benefit-of-the-bargain rule is the correct one, the fundamental rule, universally employed, is the one just indicated: The victims of fraud are entitled to compensation for every wrong which was the natural and proximate result of the fraud."

91 P.2d at 313.

It seems apparent that some of the expense incurred in an attempt to improve this well might be considered as monies reasonably expended to minimize damages:

"§ 169.   Expenses in efforts to lessen damages.

"One injured by the wrongful or negligent act of another may recover, as part of his damages, expenses incurred in the exercise of reasonable diligence to prevent or to minimize the damage caused by the wrongful act of the defendant. Thus, in the case of a breach of contract, expenditures actually made by the nondefaulting party as a reasonable effort to minimize the losses may be recovered as a part of his damages. * * *"

22 Am.Jur.2d Damages § 169, p. 238.

And see Restatement, Torts, § 919.

■ Of course, in computing damages, the trier of fact must not be permitted to allow double recovery, by computing items, directly or indirectly, under a "loss-of-bargain" theory and then including the same item in an "out-of-pocket" computation.

Such would be the case, for instance, if a defrauded party were allowed crop losses in future years, when the market value of the property as represented includes the potential of future crop successes. Such inhibition on double recovery is one of constant concern to the court in awarding damage. See A. R. A. Manufacturing Co. v. Pierce, 86 Ariz. 136, 341 P.2d 928 (1959), for a discussion of the possibility of "double recovery" in a contract case.

We do not consider the *Lutfy* decision to be authority eliminating recovery of consequential damage beyond loss of bargain. That decision does not cope with any contention that the plaintiff was entitled to recover any such damage. The same may be said of Carrel v. Lux, 101 Ariz. 430, 420 P. 2d 564 (1966), and Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636 (1961). In Ren v. Jones, 38 Ariz. 476, 1 P.2d 110 (1931), the general law in this area was stated in a form of a quotation from 12 R.C.L. 453:

"The measure of damages for fraud in inducing the purchase of property is the difference between the actual value of the property at the date of the sale and the contract price, *with interest thereon, together with such other damages as are. immediate consequences of the defendant's wrong.*"

(Emphasis added)

38 Ariz. at 480–481, 1 P.2d at 112.

■ Though the above quotation indicates that the loss in value by failure to come up to the representation is "* * * with interest thereon * * *" from the date of the transaction, we are inclined to believe that this holding is in conflict with a later pronouncement of our Supreme Court that an unliquidated claim bears no interest until date of judgment. Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144 (1959). Inasmuch as a judgment rendered in this action will, if rendered, bear interest only from time of judgment, we believe the jury should be permitted to consider any profits lost or losses sustained as to crops by reason of the failure of the well to come up to representations, up to the time of trial. In a decision

28

remarkably close in factual situation, Shepard v. Cal-Nine Farms, 252 F.2d 884 (9th Cir.1958), a federal court, in applying Arizona's "benefit-of-the-bargain" rule, allowed an award for crop damages sustained by reason of inadequate water supply, properly taking, as we see it, a flexible approach to the problem of assessing damages in a fraud action.

But, though the verdict rendered might be justified by evidence stricken from the record under other instructions than those given, a reversal of the order granting a new trial is not justified. The decision of whether to grant a new trial for the reason that a verdict is not justified by the evidence is one lying peculiarly within the discretion of the trial court. State v. Ross, 97 Ariz. 51, 396 P.2d 619 (1964). Nonconformity of a general verdict to the judge's charge is ground for a new trial, according to the weight of authority, regardless of whether the instructions were correct or erroneous. 39 Am.Jur. New Trial § 127, p. 136; 66 C.J.S. New Trial § 68, pp. 201–202.

As we believe the granting of the new trial was justified on the first grounds given by the trial court, we do not consider the second grounds. The problem of authenticity of documentary evidence involved in this second ground is complicated by an off-the-record stipulation of counsel, and we do not believe that the problem need arise in the new trial to be conducted.

The purchasers also complain that the court granted a new trial as to all issues, rather than only to the issue of damages. We have stated the evidence pertaining to the fraud in terms favorable to the verdict rendered below, as we believe that we are bound to do. Safeway Stores, Incorporated v. Cone, 2 Ariz.App. 151, 406 P.2d 869 (1965). However, the issue of fraud was hotly contested and very possibly on a retrial the trier of fact might be convinced otherwise on this issue. We have

previously expressed ourselves on the subject of the trial court's granting a new trial as to all issues in In re Thompson's Estate, 1 Ariz.App. 18, 398 P.2d 926, 931 (1965). We will not repeat our reasoning but hold that the granting of a new trial as to all issues was within the discretion of the trial court in this case. Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.