446 P.2d 255

Leon ULAN and Sylvia Ulan, husband and wife, Appellants,

v.

Dorothy E. RICHTARS, a widow, and John B. Richtars, a single man, Daniel C. Maloney and Ellene Maloney, husband and wife, Butera Trust, Inc., an Arizona corporation, and Western Surety Company, a corporation, Appellees.

No. 2 CA–CIV 556.

Court of Appeals of Arizona.

Oct. 15, 1968.

Review Denied Dec. 10, 1968.

William Messing, Tucson, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellees.

MOLLOY, Judge.

The appellees, Dorothy E. Richtars and her son, John B. Richtars, brought suit against the appellants, Leon Ulan and his wife, Sylvia Ulan, and others, seeking damages for fraud in a land transaction. The specific charge of fraud is that the appellant Ulan induced plaintiffs to accept, as partial payment for conveyance of a residence to the Ulans, a seller's equity in a contract for the sale of New Mexico land by fraudulently representing to plaintiffs that a $2,000 initial payment had been made on the $8,000 contract by the vendee when, in fact, no such payment had been made. A jury trial resulted in a judgment in favor of the Richtars and the Ulans appeal, asserting seven grounds for reversal.

We state the facts, as we must, in the light favorable to the Richtars, who prevailed below. In July of 1963, the Richtars owned a residence in Tucson which they wished to sell. John Richtars was in California, and Mrs. Richtars, a widow, was attending to selling the property. One Maloney, a real estate salesman, asked if he might represent the sellers and was granted that privilege. Maloney brought the house to the attention of Leon Ulan, a real estate investor in Tucson. Ulan made an offer to purchase it in exchange for assumption by the Ulans of the existing mortgage on the property, which was something in excess of $13,600, plus $2,300 in cash, and a vendor's interest in a land contract relating to a tract of land in Luna County, New Mexico.

This contract for sale of the New Mexico land was dated September 12, 1962. It was in the original amount of $8,000 and contained a recital, under the "payable as follows" clause, stating "[t]he sum of $2,-000.00 payable concurrently herewith." The first annual installment of $600 on the face value balance of $6,000 was due on October 1, 1963. The contract also contained a statement that the liability of the purchaser (one Dabrow) "* * * is limited to the within described real property."

At the trial, the original vendor, Kay, testified that the contract purchaser, Dabrow, had given him a note for $2,000 on execution of the contract instead of making a cash payment. Katz, the real estate salesman who handled the transaction in which Ulan acquired this contract testified that he told Ulan of the lack of a cash down payment when that deal was consummated. Maloney testified, and Ulan's testimony is substantially the same, that Ulan told Maloney that $2,000 had been paid down on the contract and that it was a "good" contract.

When Maloney submitted Ulan's offer to Mrs. Richtars, he conveyed to her the gist of Ulan's representations concerning the contract. Mrs. Richtars consulted her nephew, Louis Richtars, who was an employee at a bank and was involved to some extent in bank mortgage and real estate matters. He advised that he knew of Mr. Kay, and that if Mr. Kay's name was on the contract, he would consider it a good contract. Predisposed at that point to accept the contract, Mrs. Richtars called her son in California to discuss the matter. He indicated his willingness to accept the Ulan offer. The transaction was thereafter closed, with the plaintiffs accepting the New Mexico land contract as a $6,000 credit toward an expressed sales price of $21,700.

No payments were ever made by the land contract vendee to the Richtars. It is admitted by the Ulans that the land which is the subject of the contract is "* * * practically worthless * * *" We will refer to certain additional facts in our discussion of the seven separate propositions advanced by appellants Ulan.

## 1. FAILURE OF THE COURT TO GRANT A MISTRIAL

■ Appellants' first contention is that the trial court should have granted their motion for a mistrial when it was learned that a juror and the witness Katz had a brief conversation during a recess in the trial. Both stated to the trial judge, under oath and in the absence of each other, that they had not discussed any matter relating to the trial. The juror stated unequivocally to the trial judge that he could consider and decide the case fairly and impartially.

■■ Where there has been misconduct on the part of a juror, the grant or denial of a motion for a mistrial is a matter within the sound discretion of the trial court. Sanders v. Beckwith, 79 Ariz. 67, 70, 283 P.2d 235, 238 (1955). Prejudice to the moving party will not be assumed; it must appear probable from the record. Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30 (1939).[1] We find no probability of prejudice in the record before us here. This court sustained the denial of a motion for mistrial under similar but ostensibly less innocent circumstances in Simpson v. Heiderich, 4 Ariz. App. 232, 234, 419 P.2d 362, 364 (1966).

## 2. ADMISSIBILITY OF EVIDENCE

■ Appellants contend that the trial court should not have permitted appellees to introduce evidence relating to the "three-cornered" transaction between Ulan, Kay, and a person residing in Texas by virtue of which Ulan came into possession of the vendor's interest in the New Mexico land contract.

The purpose of appellees in introducing evidence of the transaction was to attempt to show that Ulan had given up nothing of value in return for the two[2] New Mexico land contract interests that he received. Appellants claim that the evidence was irrelevant and immaterial to any issue in the case. If this is so, there would be no reversible error, for the testimony elicited is innocuous unless it has probative value as to the fraud issue on trial. Hence, we

1. See Annot., "Prejudicial effect, in civil case, of communications between witnesses and jurors," 52 A.L.R.2d 182.

2. Ulan received another land contract from Kay of $15,000 face value. It was also passed on by Ulan to a third person and was also the subject of litigation which resulted in a jury verdict for Ulan. See Ulan v. Kay, 7 Ariz.App. 325, 439 P.2d 297 (1968).

would not reverse in any event. However, the testimony in question culminated with a statement by the witness to the effect that Ulan stated he was willing to take the vendor's interest in the New Mexico land contracts, in spite of their questionable value, in view of the fact that he had only a limited and doubtful investment in the motel which he was conveying. We believe the testimony objected to was within the periphery of what the trial court, in its discretion, could consider relevant in this fraud action.

## 3. DENIAL OF A DIRECTED VERDICT FOR APPELLANTS

█ Appellants' third contention is that the trial court erroneously failed to grant their motion for a directed verdict at the close of plaintiffs' case. The basis of appellants' motion was that plaintiffs had failed to prove "reliance" and "right to rely." See Moore v. Meyers, 31 Ariz. 347, 355, 253 P. 626, 628 (1927).

In essence, appellants claim that Mrs. Richtars placed reliance upon the advice of her nephew, Louis Richtars, with respect to acceptance of the land contract interest, and that by reason of her calling in her nephew for advice, as a matter of law, it must be held that she did not rely upon any representation made by Ulan with respect to the land contract.

█ The mere fact that a representee is ignorant or suspicious and seeks the advice of others does not preclude reliance upon the false representation. Equitable Life & Casualty Ins. Co. v. Lee, 310 F.2d 262, 267 (9th Cir. 1962). In this case, only the most general kind of advice was sought by Mrs. Richtars from her nephew, and his advice was given in the light of the same representation that had been made to Mrs. Richtars.

Mrs. Richtars testified that she relied upon the representations of Ulan transmitted to her by the real estate agent. There is sufficient circumstantial evidence that her son, the other plaintiff, followed her lead and did the same. We know of no law which mandates that this evidence be set aside. The question was properly submitted to the jury. See Carrel v. Lux, 101 Ariz. 430, 420 P.2d 564 (1966).

## 4. IMPROPER CONDUCT OF COUNSEL

█ Appellants charge that they were deprived of a fair trial by reason of an agreement made between counsel for plaintiffs and counsel representing all of the other defendants in the case, who included the salesman, Maloney, and his broker. The agreement was described as a "mutual options" settlement agreement. There is no sworn testimony as to the precise terms of the agreement; there is only the discussion and argument by counsel as to its nature and effect before the lower court.

The discussion is not entirely clear and consistent, but it appears that prior to or during the trial, plaintiffs' counsel and counsel for all defendants, except appellants, agreed that at any time before the verdict, plaintiffs' counsel could tender counsel for those defendants a covenant not to execute and receive back the sum of $1,000. Counsel for those defendants, on the other hand, had the reciprocal option of tendering to plaintiffs $1,000, in which event it was agreed that plaintiffs' counsel would give in return the covenant not to execute against those defendants in the event of a jury verdict against any of them. Counsel for plaintiffs-appellees stated that it was not a binding agreement, and that it was to be void if the jury returned a verdict only against appellants. That contingency occurred, and the Richtars did not receive $1,000 from these other defendants.

Appellants urge that we should not sanction such an agreement. Appellants' argument on this point, though indignant, is not supported by any citation of authority. Though we can conceive of various situations in which prejudice might result to a party intentionally kept in ignorance of a settlement agreement similar to this, we are not convinced that appellants have been deprived of a fair trial by reason of this particular agreement.

Appellees had no duty ·to Ulan to prosecute their case against all defendants with equal vigor. If these defendants had entered into a binding final settlement agreement, it would have been their duty to so advise the court. Of course, denominating an agreement an "option" does not necessarily mean that a case has not been settled and compromised. But, from what this record shows, there would appear to be a bona fide contingency to this ·agreement which never occurred.

Under the procedural posture of this case, the other defendants had every right to blame Ulan for any fraud that may have been committed. The conduct of counsel for the other defendants, of which these appellants complain, is consistent with such a "finger pointing." Hence, we see no vio·lation of ethics nor any prejudice to Ulan by reason of this "option" agreement.

## 5. INSTRUCTIONS ON BURDEN OF PROOF

■ The appellees complain that this statement was deleted from an instruction requested by them:

"Fraud is never presumed but must be affirmatively proved by the party alleging the same by evidence that is clear and convincing."

The court gave an instruction delineating nine separate elements of fraud and told the jury "* * * and if any of the above-stated factors have failed of proof by clear and convincing evidence, then no action for fraud lies or exists." We hold that this, and a related instruction:

"FRAUD–PERSONS P R E S U M E D HONEST

"The law presumes that all men are fair and honest and without intent to deceive, cheat, hinder, delay or defraud others. Where a transaction called into

question is clearly capable ot [sic] two constructions, one that is fair and honest and one that is dishonest, then the law is that the fair and honest construction must prevail and the transaction in question must be presumed to be fair and honest."

adequately covered ˙the deleted pertinent law. Nor do we see any need to define the terms "clear and convincing," as contended by appellants. These words are common words in the English language. The definition requested[3] by the Ulans is no clearer.

## 6. DENIAL OF MOTION FOR CONTINUANCE

■ Sometime prior to trial, appellants moved for a continuance on the basis that they were prejudiced in their defense ·of the case by the absence as parties in the litigation of the third party defendants Katz and Kay. The Ulans had brought Katz and Kay into the litigation. The trial court had granted motions for summary judgment in behalf of Katz and Kay and dismissed them as parties to the case. The Ulans appealed ·those summary judgments and ultimately succeeded in obtaining their reversal. See Ulan v. Kay, 7 Ariz.App. 325, 439 P.2d 297 (1968).

The trial court, however, ruled against appellants' motion for continuance. Appellants sought a writ of certiorari in this court. This court denied appellants' petition without written opinion in Ulan v. Superior Court, 2 CA-CIV 473, for lack of a showing that the superior court had exceeded its jurisdiction or abused its discretion. A motion for continuance is addressed to the sound discretion of the trial court, predicated on good cause, Nordale v. Fisher, 93 Ariz. 342, 380 P.2d 1003 (1963), and we see no abuse of discretion here. The trial court has broad discretion

---

**3.** "INSTRUCTION ON BURDEN OF PROOF AND CLEAR AND CON-VINCING EVIDENCE

"I instruct you that when fraud is alleged by a party, then such party who asserts the affirmative of such allega-

tion must carry it and has the burden of proving it by clear and convincing evidence. The evidence necessary to prove such allegation must not be doubtful or unconvincing."

in determining whether issues should be tried together or severed for trial. See Rule 42(b), as amended, Rules of Civil Procedure, 16 A.R.S.

■ Immediately prior to trial, appellants made a second motion for continuance, based upon the fact that the pleadings and other portions of the trial court's record were before this court and not physically available in the trial courtroom. This second motion was also denied by the trial court. This too was clearly under its discretion and proper, as there was a pretrial order delineating the issues and copies of the pleadings were available.

## 7. DAMAGES

■ The Ulans complain of the amount of the jury verdict and the allowance, by the court, of interest on that verdict from the time of the alleged fraud. The jury first returned with a verdict for appellees in the amount of $6,000, with the words "plus interest" added. The trial court instructed the jury to return a verdict in a specific amount without any reference to interest. The jury then returned with a verdict for appellees in the amount of $6,-000. The jury was polled at the appellees' request only as to this last verdict, and this is the verdict that judgment was rendered upon. Under our rules, a party has the right to have a jury polled. Rule 49(f), Rules of Civil Procedure, 16 A.R.S. Hence, we consider the $6,000 verdict as the controlling one.

Appellees made a post-trial motion to amend the verdict by increasing it to allow for interest. The trial judge granted appellees' motion, and judgment was subsequently entered in the amount of $7,228.43, including the verdict sum of $6,000, plus $1,728.43 interest, less a $500 remittitur on account of a previous settlement made by appellees with another person not a party

to the trial who was allegedly involved in the fraudulent transaction.

■ Appellants claim the trial court was without authority to add interest to the verdict. This contention finds support in our decision of Cole v. Gerhart, 5 Ariz. App. 24, 27, 423 P.2d 100, 103 (1967). There we considered that a fraud claim was unliquidated so that under the rule adopted by our Supreme Court, Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144 (1959), it could only bear interest from judgment. Other courts have taken a similar view. See Annot., 171 A.L.R. at 823–825. That the claim here is an unliquidated one is made apparent when we consider the rule of damage in a fraud action. This consideration is inextricably related to the additional assertion of error as to the instruction given on the measure of damage.

■ The Ulans requested an instruction that, if the plaintiffs were entitled to recover, their damage should be limited to $2,000. This instruction was refused, and, over their objections, the following given at plaintiffs' request:

> "Damages in a fraud case are measured by the 'benefit of the bargain' rule. This means that the party defrauded is entitled to recover the difference between the real value of the property and *the represented value of the property*." (Emphasis added)

Among the objections posed to this instruction is that there is only one alleged misrepresentation in this case and it does not pertain to the "value" of this contract but to a $2,000 down payment. This objection strikes home. There is no "represented value" in this case, as such. If there were, we would have the problem of determining whether the expression of an opinion as to value can be the basis of a fraud claim.[4] And, if the quoted language is

---

4. Generally, representations as to value, though false, are considered expressions of opinions which will not support a fraud claim. 37 Am.Jur.2d Fraud and Deceit § 112, at 157 et seq. In Poley v. Bender,

87 Ariz. 35, 347 P.2d 696 (1959), our Supreme Court held that the representation that a domestic water supply was "good" would not support a claim in fraud.

taken to mean the value this contract *would have had* if there had been a down payment as represented, then there is practically no evidence in the record of that value, and what evidence there is does not suggest a value approaching $6,000.

The evidence is undisputed here that the land was at all pertinent times[5] practically worthless, and that the purchaser was not personally obligated on the contract (a fact that Ulan testified "slipped by" him without notice and that Mrs. Richtars also failed to note). Thus, the value of this contract would have been little more than nothing, regardless of whether a down payment had been made or not. The fact that someone might have been induced to pay $2,000 on this worthless land would add very little to the value of this contract on an open market of informed buyers.

And yet, though an application of a benefit-of-the-bargain rule results in little or no recovery here, it is most evident that, if the facts found by the jury are true, the plaintiff suffered substantial loss. The instruction requested by the defendants that would have allowed the plaintiffs a recovery of $2,000 does not, of course, have any pertinency to the facts of this case under any theory of damage. This representation pertained to a past payment which was not to be received by these plaintiffs. But the request itself acknowledges the inescapable—if the jury's findings of fraud and reliance are correct, then these plaintiffs sustained a substantial monetary loss because of the defendants' wrong.

The evidence is undisputed that the plaintiffs parted from an equity in real property with an indicated value of $8,300 and ended up with a piece of paper of unsubstantial value[6] and a few hundred dollars[7] after closing costs. Because of the benefit-of-the bargain rule, are they to be denied their damages? We do not think our Supreme Court so intends.

Our Supreme Court has stated on several occasions that the "benefit of the bargain" rule pertains in this jurisdiction. Carrel v. Lux, 101 Ariz. 430, 441, 420 P.2d 564, 575 (1966); Steele v. Vanderslice, 90 Ariz. 277, 286, 367 P.2d 636, 641 (1961); Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 503, 115 P.2d 161, 165 (1941). But, it has always said so in such context as to allow to a defrauded party full damage for loss sustained, including loss of bargain. The decision in *Lutfy,* in which decision our Supreme Court first placed the label "benefit of the bargain" on our rule, is indicative of the Court's intention:

"A few courts have 'adopted the view that the measure of damages for fraud inducing a contract for the purchase or exchange of property is the difference between the actual value of the property acquired by the plaintiff, at the time of making of the contract, and the purchase money or other consideration parted with by him.' Annotation at 124 A.L.R. 52. And wherever this rule is the guide the defrauded party may recover *only* the amount he is 'out of pocket' and is not entitled to the 'benefit of the bargain,' the rule prevailing in this jurisdiction. The principal authorities cited by appellee bearing directly on this question are from jurisdictions in which the 'out of pocket' rule seemingly prevails.

"The refusal of the court to submit to the jury the question of punitive or exemplary damages is made the basis of the second assignment * * * Even though this be true, it occurs to us that *where, as in this jurisdiction, the 'benefit of the bargain'* as distinct from the 'out of pocket' *rule applies, punitive*

5. The law seems to be clear that the controlling value is the value at the date of the fraudulent transaction, and not at a later date. Steele v. Vanderslice, 90 Ariz. 277, 286, 367 P.2d 636 (1961); Packard Phoenix Motor Co. v. McRuer, 41 Ariz. 450, 456, 19 P.2d 332, 334 (1933); and see 37 Am.Jur.2d Fraud and Deceit § 342, at 460.

6. The undisputed evidence was that the cost of foreclosing the contract was approximately the same as the value of the land.

7. $406.48 to be exact.

*damages should not be allowed,* unless the conduct of the wrongdoer is wanton, reckless or shows spite or ill will." (Emphasis added) 57 Ariz. at 503, 115 P.2d at 165.

The Court that adopted this language was certainly not contemplating a formula that would deny damages actually sustained by a defrauded party. In each case in which the Supreme Court has given its blessing to the "benefit of the bargain" rule, there is no indication that the defrauded party was to recover less than would have been the case under some other theory.

In our decision of Cole v. Gerhart, 5 Ariz.App. 24, at 26–27, 423 P.2d 100, at 102–103 (1967), we quoted from the landmark case of Selman v. Shirley, supplemental opinion, 161 Or. 582, 85 P.2d 384, 91 P.2d 312, 313, 124 A.L.R. 1, 16 (1939), and we now requote this same language and additional language from this case because of its extreme pertinency:

"We are likely to become so engrossed in efforts to formulate a rule of damages capable of precise application in all future cases and incapable of misapplication in any, that we may lose sight of our real duty in the present case; which is to sift out the charges of fraud, and, if it then appears that the alleged wrongdoer is guilty of the charges made against him, to enter judgment against him for all damages which are the proximate result of the wrong which he committed. Upon the reargument the defendants did not contend that the circuit court erred when it found that the charges of fraud were true, nor that we erred when we adopted that finding. Hence, the ascertainment of what, if any, damages were the proximate result of the wrong is the only problem before us.

"Regardless of whether the out-of-pocket-loss rule or the benefit-of-the-bargain rule is the correct one, the fundamental rule, universally employed, is the one just indicated: *The victims of fraud are entitled to compensation for every wrong which was the natural and proximate result of the fraud."*

\* \* \* \* \* \*

"To facilitate its application the proximate result rule is often subdivided into four auxiliary rules: (1) A defrauded party is entitled to all out-of-pocket losses; (2) he is entitled to the benefit of his bargain; (3) if the property was falsely represented as improved with or containing some items which are not there, he is entitled to the cost of installing them; and (4) he is entitled to all consequential damages. These are merely subdivisions of the main rule, and are employed by the courts according to the facts and demands of the various cases." (Emphasis added)

Our Supreme Court has recently used language in the same vein in a fraud case. In Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966), a case involving fraudulent certificates issued by a public weighmaster, the Court spoke of the plaintiff's "injury" as being a " \* \* \* direct and proximate result of the fraud \* \* \*" and allowed a recovery on the basis of overpayments by reason of the fraud, without mention of a benefit-of-the-bargain standard.

The instruction given in the instant case was misleading, and possibly prejudicial to the defendants, for it indicated that the jury should take the expressed purchase price of the contract, a value which was not related to the fraud charged. Nor can we approve of the addition of interest to the jury verdict. But, neither can we accept the defendants' view of little or no damage. When the benefit-of-the-bargain rule so obviously misgauges actual damage, or is completely inappropriate,[8] it is our view that an instruction should

---

8. Most reported fraud cases involve the situation in which the defrauded party has been induced to give more for something than it is worth. In the occasional cases presenting the converse, that is, when the defrauded party has been induced to part

be given in terms of pecuniary loss and proximate cause, in language broad enough to include loss of bargain, if there be evidence to support it.

As for causal connection, the Restatement of Torts expresses an appropriate standard:

> "The maker of a fraudulent misrepresentation in a business transaction is liable for pecuniary loss caused to its recipient by his reliance upon the truth of the matter misrepresented if his justifiable reliance upon the misrepresentation is a substantial factor in determining the course of conduct which results in his loss." Restatement of Torts § 546, at 106.

As we emphasized in *Cole* (5 Ariz.App. 27, 423 P.2d 103), no plaintiff is entitled to recover more than once for the same damage, but similar problems may be encountered in either contract or negligence cases. Fact finders are considered competent to avoid duplication of damage in

with property because of misrepresentations which *downgrade* its value, courts have been unable to apply the benefit-of-the-bargain rule. See selection of cases in Annot., entitled " 'Out of Pocket' or

these cases, and we see no reason why they cannot do so in a fraud case.

The only error made here pertains to the damage aspect of the case. There is no indication of a compromise verdict or other circumstance to jointly taint the liability and damage findings. While the evidence that Ulan knew of the lack of a down payment is far from conclusive, there was a fair trial on that issue and it has been resolved by the jury in the plaintiffs' favor. In *Cole,* we affirmed a trial court's discretion in allowing a new trial on all issues because of an erroneous damage instruction. Here, the initial decision as to the extent of the retrial must be made in this court and we deem it appropriate to limit the new trial to the issue of damages. See State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967).

Reversed and remanded for a new trial on the issue of damages only.

HATHAWAY, C. J., and KRUCKER, J., concur.

'Benefit of Bargain' as Proper Rule of Damages for Fraudulent Representations Inducing Contract for the Transfer of Property." 13 A.L.R.3d 875, at 970–973.