638 P.2d 1367

George MAMMAS and Mary Mammas, husband and wife, Plaintiffs/Appellants,

v.

ORO VALLEY TOWNHOUSES, INC., an Arizona corporation; and Realty Executives of Tucson, an Arizona corporation; and Donald R. Rossi and Donna D. Rossi, husband and wife; and Tucson Realty and Trust Co., an Arizona corporation, Defendants/Appellees.

No. 2 CA–CIV 4033.

Court of Appeals of Arizona, Division 2.

Dec. 15, 1981.

Johnston & Grynkewich by Gary S. Grynkewich, Tucson, for plaintiffs/appellants.

Lesher, Kimble & Rucker, P.C. by Robert O. Lesher, Tucson, for defendants/appellees.

## OPINION

BIRDSALL, Judge.

Plaintiffs/appellants appeal from the trial court's dismissal of their action by directed verdict in favor of defendants/appellees at the close of the plaintiffs' evidence. They claim that this ruling was error. We agree and reverse.

The appellants' complaint contained three counts—the first and second counts sought the same damages on two different theories, breach of contract and fraud. The third count sought other special compensatory damage for other alleged breaches of contract.

In early July, 1977, appellee Donna D. Rossi was a sales agent for appellee Realty Executives of Tucson. She met appellant George Mammas in Chicago, learned that he was planning to move to Arizona, and showed him literature concerning some townhouse developments in Tucson. Included in this information was a floor plan for the Malaga Model of appellee Oro Valley Townhouses, Inc., which showed it had 2089 sq. ft. of living area.

Appellants came to Tucson July 17, looked at one or two completed Malaga townhouses and the next day contracted with appellee Oro Valley for a Malaga Model to be constructed on a lot in the development. The contract provided the home would be completed on November 1. Appellants returned to Chicago and did not come back to Tucson until November 10. The home was not completed but appellants remained in Tucson living at the Cliff Manor Motel. They owned a ¼ interest in the motel and became its resident managers at this same time.

In November, after arriving in Tucson, the appellants contracted for certain extras, including a fireplace, with the builder who had been engaged by appellee Oro Valley to construct their townhome. They also purchased utilities [1] and carpeting for the unit.

The promotional literature appellee Rossi gave appellants showing the square footage of the living area in the Malaga was prepared by an agent of appellee Tucson Realty and Trust Co. which had an exclusive sales listing for the townhouses in Oro Valley. The agent had determined this square footage from a set of plans in Oro Valley's office. Those plans were dated in 1970. Sometime prior to August 25, 1977, the agent learned that the square footage of the Malaga Model, as it was being constructed in Oro Valley, was not 2089 but was instead 1793 sq. ft., a difference of 296 sq. ft. Consequently, on August 25, new promotional literature was prepared; one such document omitted any reference to

square feet and another showed the correct 1793 sq. ft. of living area.

No one told appellants of the discovery of this mistake. In December appellants learned, by measuring some of the rooms under construction, that the size of the unit had been misrepresented. On December 28 appellee Rossi wrote appellants as follows:

"This is to verify our telephone conversation that the Malaga Model you are purchasing on Lot 63 of Oro Valley Townhouses contains approximately 1793 square feet.

If you do not consent to this and accept property as is, contract will be voidable at your option."

Appellants refused this offer, paid for the townhouse, including the extras, and took possession. In July 1979, they sold the home at a profit. This action was commenced April 5, 1978.

Appellees concede that the evidence presented a jury question on liability on a theory of negligent misrepresentation. *See Phoenix Title and Trust Co. v. Continental Oil*, 43 Ariz. 219, 29 P.2d 1065 (1934); *Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971); *Van Buren v. Pima Community College District Board*, 113 Ariz. 85, 546 P.2d 821 (1976). However, they argued to the trial court and argue on appeal that the appellants' only damages evidence went to prove the loss of the benefit of their bargain and that this is not the proper measure of damages for negligent misrepresentation. Appellees rely on the Restatement of Torts 2d, Vol. 3, Sec. 552(B):

"(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

---

1. In argument, appellants' counsel explains "utilities" to be a refrigerator and a washer and

drier.

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant."

The only evidence of damages came from the testimony of an acknowledged expert witness, an appraiser, who gave his opinion, based on comparable sales of Oro Valley Townhomes, that if the appellants' home had contained the additional square footage of living area it would have sold for $12,000 to $13,000 more. This evidence goes to appellants' loss of the benefit of their bargain. *See Lufty v. Roper*, 57 Ariz. 495, 115 P.2d 161 (1941); *Steele v. Vanderslice*, 90 Ariz. 277, 367 P.2d 636 (1961); *Ulan v. Richtars*, 8 Ariz.App. 351, 446 P.2d 255 (1969), and Annotation 13 A.L.R.3d 875 (1967); *But see Ashley v. Kramer*, 8 Ariz. App. 27, 442 P.2d 564 (1968).

If appellees' reliance on the Restatement rule is justified then in a case of negligent misrepresentation appellants would have to show the value of the townhome as constructed, i.e., what they received in the transaction. No evidence presented tended to show this value.

We find it unnecessary to determine whether the proper measure of damages for negligent misrepresentation is the loss of the "benefit of the bargain" or the "out of pocket" rule since we find that the court should have permitted the case to go forward on the theory of actual fraud, as well as breach of contract.

Appellees are correct when they contend that at the time of the contract for the sale and purchase of the townhome the evidence shows only negligent misrepresentation and not fraud. At that time appellees believed the representation of 2089 sq. ft. to be correct. There was no intent to deceive and thus no scienter as required in actual fraud. *Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564 (1966); *Law v. Sidney*, 47 Ariz. 1, 53 P.2d 64 (1936).

The evidence which goes to proof of actual fraud is found in the appellees'

discovery that they had made a negligent misrepresentation concerning the size of the Malaga model and their concealment of that fact until December, 1977. Appellees made a representation which they believed to be true, but they subsequently learned it was false and are liable in fraud for their failure to correct the misrepresentation. *St. Joseph Hospital v. Corbetta Construction Co., Inc.*, 21 Ill.App.3d 925, 316 N.E.2d 51 (1974); *Stevens v. Marco*, 147 Cal.App.2d 357, 305 P.2d 669 (1957).

The Restatement of Torts, 2d, § 551(2)(c) covers this fact situation:

"One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

.     .     .     .     .

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so;"

The comment to this section is particularly applicable:

"One who, having made a representation which when made was true or believed to be so, remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him, is morally and legally in the same position as if he knew that his statement was false when made."

Appellees knew by August 25, at the latest, that their promotional literature for the Malaga contained a serious misrepresentation; they knew the appellants had received that literature and had contracted for the construction of the model. It was incumbent upon them at that time to advise appellants of their negligence. At that time the contract was partially executed. By December when they did confess their mistake, the unit was nearly completed, including the extras for which appellants were obligated; appellants had moved to Arizona and had purchased appliances and carpeting for the unit. While it is true that an action

for fraud is lost if the defrauded party, after acquiring knowledge of the fraud, affirms the contract, this rule is not applicable to contracts which are fully or partly executed. 37 C.J.S. Fraud § 70(c), (d); *See also Edward Greenband Enterprises of Arizona v. Pepper*, 112 Ariz. 115, 538 P.2d 389 (1975); *Mackey v. Philzona Petroleum Company*, 93 Ariz. 87, 387 P.2d 906 (1963). A jury question on liability was established by this evidence and the court should not have directed a verdict in appellees' favor on the fraud count.

In addition to the facts we have already discussed, the deposit receipt and agreement which constituted the contract provided:

"Malaga Model to be built as per specifications."

An attachment to that agreement contained the following paragraph 5:

"5. The parties agree that there were no promises, inducements, representations, or agreements in connection with this sale, except those set forth herein *and in plan Malaga*." (emphasis added)

All parties believed, at the time this contract was made, that the Malaga contained 2089 sq. ft. of living area. The breach claimed by appellants was the construction of the unit with only 1793 sq. ft. of living area. We believe the trial court also erred in directing a verdict on the breach of contract count.

In addition to their fraud and contract claims the appellants also alleged a breach of contract arising from appellees' failure to complete construction of the townhome by November 1. They also claimed that appellees failed to give them a credit for fixtures and tile which they elected to purchase. As to both alleged breaches appellants' proof failed—they proved no compensable damages for the delay and they did not prove their entitlement to the credit or the amount thereof. We find the trial court properly directed a verdict on that count.

Affirmed in part, reversed in part and remanded for a new trial.

HATHAWAY, C. J., and HOWARD, J., concur.